THE DUMBARTON REALTY COMPANY, Appellant, v. E. ERICKSON AND OTHERS, Appellees.

**New trial:** CASUALTY AND MISFORTUNE. There is no statutory authority for granting a new trial because of casualty or misfortune occurring after the entry of judgment which the petitioner seeks to vacate. As where the reporter who took the evidence died, and his notes were not certified and could not be translated, thus preventing an appeal.

**Same.** The fact that the illness of the reporter culminating in his death began prior to rendition of judgment, did not have the effect to render the failure to have his notes of the trial certified or translated a casualty occurring before trial, within the meaning of Code, section 4091, thus authorizing a new trial at a subsequent term.

**Constitutional law:** RIGHT OF APPEAL. While the constitution gives to the Supreme Court appellate jurisdiction in equitable cases, it does not provide how, or the time within which appeals shall be taken; it is left to the legislature to regulate the practice which shall govern appeals. And a party who fails to present a record in accordance with the statutory requirements, and is therefore denied a hearing on the merits of his appeal, is not deprived of any constitutional right.

**New trial:** FAILURE TO CERTIFY EVIDENCE: SUBSTITUTION OF RECORD. Conceding that a court of equity has power, independent of any constitutional or statutory provision, to grant a new trial because of the loss or destruction of the record, yet it will not exercise such power when the evidence still exists in the form in which it was taken, but by neglect or oversight it was not certified and made a part of the record prior to the death of the reporter, although the time for certification had not fully expired. And even if the testimony in such case should be regarded as lost, it could be restored in substance under the Code provision authorizing substitution or the retaking of testimony.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

FRIDAY, MAY 7, 1909.

REHEARING DENIED TUESDAY, SEPTEMBER 28, 1909.

ACTION in equity to quiet title to real estate. Twenty-seven different persons, claiming title to portions of the land in question, are named as defendants in plaintiff's petition, and the state of Iowa, also claiming title, makes itself a party by intervention. On trial to the court there was a decree for the plaintiff, under date of December 2, 1907. On April 1, 1908, the state of Iowa by its counsel filed a petition for a new trial, upon grounds which will be more fully stated in the opinion. Later other defendants filed sundry petitions for new trial, the relief asked, and the grounds assigned therefor, being identical with those set forth in the petition of the state of Iowa. The several proceedings were consolidated and tried as one. A demurrer to the petitions was overruled, and plaintiff thereupon filed an answer. The trial court, having heard the evidence offered upon the issues thus joined, found the defendants entitled to a new trial, and entered an order to that effect. The plaintiff appeals. *Reversed.*

*Edwin J. Stason,* for appellant.

*H. W. Byers,* Attorney-General, *Jepson & Jepson, Milchrist & Scott, Hubbard & Burgess, J. L. Kennedy, E. P. Farr, J. C. McConkey, M. L. Sears* and *Sullivan & Griffen,* for appellees.

WEAVER, J.—Though not directly involved in this appeal, a brief statement of the nature of the issue presented in the original case will tend to a clearer understanding of the merits of the several propositions argued by counsel. At one time, more or less remote, the plaintiff or its grantors owned certain lots and blocks of land in Sioux City, near, but not directly bordering upon, the

Missouri river, while the defendants (except the state of Iowa) owned the lands lying between those first above mentioned and the river shore. Thereafter, according to plaintiff's claim, the river by gradual and imperceptible movement encroached upon the shore at this point until the lands owned by said defendants and their grantors were completely submerged, and the waters of the river extended to the boundaries of the lands owned by the plantiff, which thereupon became impressed with a riparian character. Some years later, as plaintiff further alleges, the river, by like gradual and imperceptible movement, receded from the new shore line thus established until the area formerly owned by the defendants was uncovered, and it is plaintiff's claim that, by virtue of the riparian character which had been impressed upon its lands as aforesaid, the title to the uncovered area became vested in itself as an accretion. It is the conflict between this claim and the opposing claims of the defendants, who insist that their title was not extinguished by the erratic movements of the river, which the action was brought to determine. The intervention of the state is based upon the theory that the title to the bed of the river is in itself, and that the land in controversy is not in any proper sense of the word an accretion to the lands of the plaintiff. These issues were tried in the district court, Hon. John F. Oliver, judge, presiding. The evidence consisted of oral testimony taken before the court, and preserved in shorthand by the official reporters W. E. Cody and C. C. Hamilton, the former doing the larger part of the work. There were introduced also a large number of maps, plats, and other documents bearing upon the respective claims of the parties. Counsel also stipulated and agreed as to many material undisputed facts; such stipulations and agreements being orally stated, and taken down by the reporter. Upon submission of the cause the court took its decision under advisement, and nearly one year later, December 2,

1907, entered its decree in plaintiff's favor. About this time, or shortly before, the reporter, W. E. Cody, became ill though he continued to attend to his work, in part at least, until about December 20, 1907, when it was found that his condition was of such serious character as to compel his relinquishment of business, and on March 10, 1908, he died. In January, 1908, the Attorney-General reported to the executive council the result of the trial in the district court, and was directed to take an appeal from the decree to the Supreme Court. On this order being made the local counsel for the state, and other counsel for defendants, undertook an inquiry into the condition of the record, and especially as to the preservation of the testimony, and it is alleged that the reporter's notes were not at the time to be found, but on inquiry of Judge Oliver he gave it as his recollection that they were properly certified. Soon afterward the notes were found, and it was revealed that they had never been certified. Mr. Cody's notes having been written in a hand peculiar to himself, no one could be found to translate them. The trial judge would not trust his memory to reproduce the oral testimony taken before him. No agreement or stipulation could be reached between the parties which would serve to supply or substitute the record thus lost or rendered unavailable. Thereupon petitions for a new trial were filed as hereinbefore stated. No appeal from the original decree was in fact taken by any of the defendants. Trial being had to the court it made and entered a finding in the following words: "That it is now, and has been at all times since the entry of the decree in these consolidated causes, impossible to substitute or supply the evidence upon which the consolidated causes were submitted and decided, with a fair degree of faithfulness to the original testimony and evidence." And on this finding a new trial was ordered, and plaintiff appeals.

The several propositions argued by counsel may be

grouped and considered under two general inquiries: First, whether the relief granted to the appellees by the court below is justified upon statutory or constitutional grounds; and, second, whether, if such relief is not provided for by statute or Constitution, the granting thereof is still a matter within the court's inherent powers.

I.   Under our practice act a party to an action in which an appealable order or judgment has been rendered may obtain a reexamination thereof at the same term, upon motion showing sufficient cause therefor, filed within three days.   Code, sections 3755, 3756.   Where the grounds for such relief are not discovered until after the term at which the judgment is entered new trial may be granted, upon petition filed within one year, for any of the following reasons: "(1) For mistake, neglect or omission of the clerk, or irregularity in obtaining the same; (2) for fraud practiced in obtaining the same; (3) for erroneous proceedings against a minor or person of unsound mind; (4) for the death of one of the parties before the rendition of the judgment; (5) for unavoidable casualty or misfortune preventing the party from prosecuting or defending; (6) for error in the judgment or order shown by a minor within twelve months after arriving at majority." Code section 4091.   So far as we are aware, the trial court has no statutory authority to set aside or vacate a judgment or decree, duly entered and recorded at a prior term, other than is contained in the statute just quoted.   If this provision be broad enough to include the case made by the appellees herein, it must be found in the fifth subdivision of the section, which authorizes the vacation of a judgment and the granting of a new trial "for unavoidable casualty or misfortune preventing the party from prosecuting or defending."   A careful reading of this clause makes it very clear that this language has exclusive reference to matters occurring before the entry of the judgment

*1. NEW TRIAL: casualty and misfortune.*

sought to be vacated. Indeed its most obvious, though perhaps not its only, application is to cases where by some casualty or misfortune a defendant has been made to suffer default, or a plaintiff has been held in default for want of prosecution of his action. It is not every casualty or misfortune which justifies such relief, but only such as "prevents the party from prosecuting or defending." No such claim is presented in the case before us. All the parties were in court upon the original hearing, the plaintiff prosecuting, and the defendants contesting and defending, each step in the proceedings. The issues were submitted only after a full and complete trial, in which all parties had full opportunity to introduce every item of testimony which they believed to have any bearing upon the controversy. Surely it cannot be said that the death of Mr. Cody, occurring more than a year after the cause was tried and submitted, and three months after the entry of the decree, was a casualty preventing these appellees from making their defense.

The identical question here raised was before this court in *Loomis v. McKenzie,* 48 Iowa, 416, where, after an appeal in an equitable cause had been taken, it was found that all the written evidence upon which the cause had been tried was lost without fault on the part of the plaintiff, who thereupon dismissed his appeal, and petitioned for a new trial. The petition was granted, and upon an appeal to this court the order was reversed. The ruling of the trial court was there sought to be sustained by reference to this same paragraph of the statute, on the theory that a loss of evidence after trial, thus preventing an effectual appeal, is an "unavoidable casualty or misfortune preventing the party from prosecuting or defending." That construction of the statute was approved by Adams, J., in a dissenting opinion, but the majority of the court, speaking by Beck, J., held otherwise. The majority opinion says: "It cannot be said a party is pre-

vented from prosecuting or. defending a case by matters oc-
curring after judgment. But it may be said he is prevented
from prosecuting or defending his appeal in the case. But
no such meaning can be put upon the language. It unmis-
takably · refers to casualties which prevented the prosecu-
tion or defense at the trial upon which the judgment was
entered." This exposition of the statute has stood unchal-
lenged for more than thirty years, and it is so .well in
accord with our views as to the meaning and effect of the
language employed that ·we are not at liberty to reject its
authority as a precedent. Without pursuing our inquiry
into what may have been held by courts in other jurisdic-
tions under statutes not identical with our own we are dis-
posed to adhere to our former ruling, and say that we have
no statutory provision authorizing the granting of a new
trial because of casualty or misfortune occurring after the
entry of the judgment or decree, which the petitioner seeks
to vacate.

It is suggested in argument that this casualty may
properly be said to have occurred before the entry of the
decree, because it appears that Mr. Cody had then already
entered upon the decline which ended in
2. SAME.             his death several months later. But the
point cannot be sustained. In the first place the trial had
been completed, and the cause submitted nearly or quite a
full year before the decree was entered, and the testimony
could have been, and indeed ought to have been, properly
certified by the reporter and presiding judge immediately
upon the conclusion of the trial. This, so far as our ob-
servation extends, is the substantially universal practice in
our trial courts. If not content to rely upon this practice,
any party to the proceeding could have made certain the
certification by a simple request to the court or to the
reporter, and any doubt in the matter could have been
removed by a little inquiry at any time during the year
or more which intervened between the close of the trial

and the entire withdrawal of Mr. Cody from his work. Moreover, even after the decree was entered, at least three weeks elapsed before the reporter reached a condition which forbade application to him for such certification, but the wisdom of examining into the record in this respect does not seem to have impressed itself upon the minds of counsel until too late. We do not intend by this suggestion to charge counsel with negligence, but to emphasize the thought, already expressed, that the death of Mr. Cody, occurring a considerable time after the entry of the decree, cannot fairly be said to have been a casualty preventing the defendants from making their defense, or from a preservation of the record in due form. Finding, as we do, that the statute does not authorize the granting of a new trial, we have to consider whether the granting of such petition is essential to the protection of appellees' constitutional right of appeal from a finding against them upon the merits of the matters in controversy.

If we understand counsel's position at this point, the argument is as follows: The Constitution of this state grants to every party to an equitable action a right of appeal to the Supreme Court; and, as that right involves a trial *de novo* upon the evidence offered in the court below, it is indispensable to such right that the evidence produced on the trial below be preserved in authentic form. From these premises the conclusion is sought to be reached that, if without fault of the party desiring to appeal the testimony is lost, it is essential to the full enjoyment of his constitutional right that he be granted a new trial in order that a record may be made upon which he may have a hearing *de novo* in the appellate tribunal. For the purposes of the present case the correctness of the premises may be conceded, but the conclusion cannot be admitted. It is true that our state Constitution (article 5, section 4) gives to the Supreme Court appellate jurisdiction in equitable cases.

3. CONSTITU-
TIONAL LAW:
right of
appeal.

Under this provision it has been held that a statute, providing for the trial of an equitable action as an action at law, without securing to the parties the right to have all the evidence reduced to writing and made of record for use upon appeal, is unconstitutional. *Sherwood v. Sherwood,* 44 Iowa, 192; *Holbrook v. Fahey,* 51 Iowa, 408. With the law of these precedents we have no occasion now to quarrel. But the Constitution nowhere undertakes to provide how an appeal shall be taken, or the time within which the right may be exercised, nor does it prescribe or regulate the practice which shall prevail in this class of cases. All this is very appropriately left to the discretion of the Legislature. Exercising this power, the Legislature has explicitly provided the manner and method by which a party to an equitable action may preserve of record everything which is essential to a hearing *de novo* in this court. The party who fails to observe these regulations, or to present a record in accordance therewith, and is therefore denied a hearing upon the merits of his appeal, is not deprived of any constitutional right. His right of appeal is a right to prosecute the same according to the reasonable rules and regulations imposed by legislative authority. As we have already seen, it was within the right and power of any party to this action to have the evidence duly certified and filed at the close of the trial, and thus made a part of the record. Code, sections 3651, 3652; Chapter 155, Laws 31st General Assembly. This was not done. True, the right to have such certification made did not expire until six months after the entry of the decree, but the facts do not present a case where, by reason of casualty or misfortune, no opportunity has been given the party to make of record the evidence which he desires to have reviewed on appeal.

Moreover, we are not prepared to hold that failure to perfect a record or an appeal because of noncompliance with reasonable legislative regulations can be, excused by

a showing that such noncompliance was occasioned by accident, casualty, or misfortune, or that refusal to give effect to such excuse is the denial of a constitutional right. This right, like all others, must be exercised and worked out through the channels of the law, and to enjoy it the party must put himself in the attitude which the statute prescribes.    General rules and regulations are framed with a view to general needs and demands; and a failure to comply therewith, though caused by misfortune beyond the party's control, does not ordinarily affect their application.    Assuming, for instance, the constitutional right of appeal by a party to an equitable action, counsel will probably not deny that such right must be exercised within the six months prescribed by the statute.    It is easily conceivable that the sickness or insanity of such party occurring during that period may prevent an appeal within the time limited, yet a refusal to entertain his appeal, taken at a later date, could hardly be construed into a denial of a constitutional right.    In such cases the appeal fails, not because a constitutional right is denied, but because of failure to comply with the conditions constitutionally imposed upon its exercise.    If the failure is caused by unavoidable casualty, the party thus handicapped suffers a misfortune, but no wrong for which either Constitution or statute provides a remedy.

II.    Independent of express constitutional and statutory provisions, is the granting of such relief within the general equity powers of the court?    The question here stated is one of much interest and importance.    We are not prepared to say that no case may arise in which the loss or destruction of a record after decree entered will entitle a party to a new trial.    Such reserve or inherent power in the court has been directly or inferentially asserted by many respectable authorities cited by the appellee herein.    *Curran v. Wilcox*, 10 Neb. 449 (6 N. W.

4. NEW TRIAL: failure to certify evidence: substitution of record.

762); *Hume v. Bowie,* 148 U. S. 245 (13 Sup. Ct. 582, 37 L. Ed. 438); *Crittenden v. Schermerhorn,* 35 Mich. 370; *People v. Court,* 40 Mich. 630; *Borrowscale v. Bosworth,* 98 Mass. 34; *Cutler v. Rice,* 14 Pick. (Mass.) 494; *Richardson v. State,* 15 Wyo. 465 (89 Pac. 1027). And such authority has been hinted at, but never expressly asserted, in decisions of this court. *Spinney v. Halliday,* 115 Iowa, 420; *Loomis v. McKenzie,* 48 Iowa, 416; *Lowery v. Lowery,* 139 Iowa, 363; *Ormsby v. Graham,* 123 Iowa, 202. In other cases we seem to have held in effect that, while a court of equity will entertain a proceeding for a new trial instituted more than one year after the entry of the decree, yet the demand for the new trial must still be based on some statutory ground. *Lumpkin v. Snook,* 63 Iowa, 515; *Jackson v. Gould,* 96 Iowa, 488; *Larson v. Williams,* 100 Iowa, 110; *Mains v. Bank,* 113 Iowa, 395; *Ruppin v. McLachlan,* 122 Iowa, 343; *Richards v. Moran,* 137 Iowa, 220. But none of these cases present the precise question which is here raised, and we may fairly say that it remains an open question whether a court of equity may not, in the exercise of its general equity powers, order a new trial when the record of the evidence has been wholly lost without fault of the party applying, and it is not within the power of such party, or of the court upon his application to restore or substitute the lost record. Nor is it necessary now to pass upon that proposition; for, even if the existence of such authority be admitted, the case before us is not one calling for its exercise. We have here no lost record. The evidence taken still exists, so far as appears, in precisely the form in which it was left at the close of the trial. That it was never made of record is, in part at least, the fault of the appellees. True, the time in which certification by the reporter could have been procured was materially lessened by his death, but it cannot be said that no opportunity was given for that purpose. Or, if for the purposes of the case

we treat as done that which ought to have been done, and consider the evidence as having been made of record, and then lost or by some unavoidable casualty rendered unavailing to the party wishing to appeal, our statute expressly provides for a substitution of the missing record, even to the retaking of the testimony. Code, section 4127; *Loomis v. McKenzie,* 48 Iowa, 416; *Ormsby v. Graham,* 123 Iowa, 202.

By pursuing this remedy the losing party preserves his right to trial *de novo* on appeal, while the prevailing party is not deprived of the legitimate advantage of the decree in his favor pending the disposition of the case by the appellate tribunal. So, also, if the testimony taken and considered by the court be lost before the party has reasonable opportunity to have it made of record, we see no good reason for denying to the court the power to direct that it be retaken. No relief of this nature was asked by the appellees. Whatever may be the length and breadth of their inherent powers, courts are always slow to draw thereon until the party asking it has fairly and fully exhausted the remedies provided by the written laws of the land. There is nothing in the record to indicate that the witnesses testifying in the case could not have been recalled and their testimony retaken. The judge who presided at the trial, even though not able himself to reproduce the record, would easily have been able to keep the re-examination of the witnesses within the general lines observed in the original hearing, and to effect a practical perfection of the record. This of course would necessitate labor and expense, but certainly not in excess of that which would be imposed upon the parties by the granting of a new trial. It is to be admitted that counsel as witnesses testify that in their judgment a reproduction of the testimony was impracticable. If by this is meant a repetition of identical questions and answers, the view thus expressed is doubtless correct, but substantial accuracy

does not require a literal copy of the record. The subject-matter of the controversy remains the same; the identity of the witnesses is unchanged; their knowledge and memory of material facts ought not to have become seriously impaired; the theory of counsel. as to the facts and the law of the case must still have been fresh in their minds—and, with these factors in hand, we feel very certain that the retaking of the evidence, though a work of much magnitude, was by no means impossible.

We conclude that the trial court erred in granting a new trial, and the order must therefore be *reversed*.