STATE of Iowa, Appellee,

v.

Andrew Joseph PROULX, Appellant.

No. 56835.

Supreme Court of Iowa.

April 20, 1977.

Paul E. Pfeffer, Clinton, for appellant.

Richard C. Turner, Atty. Gen., Ray Sullins, Asst. Atty. Gen., G. Wylie Pillers, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

MASON, Justice.

Defendant, Andrew Joseph Proulx, was charged by county attorney's information with operation of a motor vehicle while intoxicated in violation of section 321.281, The Code, 1973. Trial to a jury resulted in the return of a guilty verdict on August 23, 1973. August 31 judgment and sentence was imposed pursuant to the jury's finding of guilt. Defendant's driving privileges were suspended for 60 days and he was fined $300 plus costs. Defendant's appeal followed.

The events leading to this prosecution commenced at approximately 11:00 p. m. on May 31, 1973, when defendant was arrested by Corporal Arthur Laufenberg of the Clinton Police Department for operation of a motor vehicle while intoxicated. Corporal Laufenberg transported defendant to the Clinton County/City Law Enforcement Center where defendant was requested to perform a number of tests indicative of a suspect's manual abilities and was subjected to a standard interrogation. In addition, defendant was told of his options with respect to the various chemical tests which would be performed to determine the alcoholic contents of his blood. Defendant was presented with a chemical test consent form and signed his name indicating he wished the breath test and Officer Laufenberg noted on the form defendant had refused the blood test. The testing procedures and most of defendant's activities in the Law Enforcement Center were video taped with his apparent consent.

June 1, 1973, a preliminary information was filed charging defendant with a violation of section 321.281. Defendant entered a plea of not guilty and requested a jury trial on June 8.

July 6 assistant county attorney Lauren Smith presented a county attorney's information charging defendant with the aforementioned crime to D. F. Halbach, associate district judge, for approval. Judge Halbach approved the information the same day but it was not filed with the clerk for some time. The exact date the information was filed with the clerk is impossible to determine in light of the fact no "filed" stamp appears thereon. However, there is evidence the information was filed with the clerk sometime between July 26 and August 1, 1973.

Defendant filed a motion to dismiss the charges against him on August 3 asserting he had been denied his right to a speedy indictment under section 795.1, The Code. He argued the 30-day limitation period of section 795.1 began to run when he waived preliminary hearing by pleading not guilty on June 8 and no information was filed within 30 days of that date. August 16, Judge Halbach overruled defendant's motion to dismiss and found that defendant was held to answer on June 8 and the information was filed with him on July 6.

Two days prior to the August 23 trial date, defendant filed a motion to suppress the breath test results on the ground there was no evidence defendant was first offered and refused a blood test. The motion was overruled immediately prior to trial.

At various points during the trial stage, defendant objected to testimony of the

State's witnesses concerning the chemical testing procedures and results used and produced herein. These objections were primarily based upon competency to administer the tests, failure to follow statutory and departmentally authorized procedures and allegedly defective results. These objections were overruled and constituted the basis for defendant's motion to strike testimony and motion for directed verdict made at the conclusion of the State's evidence and at the close of all evidence which were likewise overruled.

In rebuttal, the State displayed the video tape of defendant's actions in the Law Enforcement Center on the night of his arrest. Defendant objected to the admission of the tape on the grounds no new evidence was offered by defendant, it was prejudicial, defendant had had no opportunity to view it, it was improper rebuttal and it was rendered incompetent for lack of foundation. The trial court admitted the tape over defendant's resistance thereto.

As noted, defendant was found guilty August 23. On August 30 defendant filed a motion requesting the trial court to set aside the verdict and enter a verdict of not guilty based upon the denial of his speedy indictment right and lack of evidence to support the jury's finding. In the alternative, defendant requested the verdict be set aside and he be granted a new trial asserting as grounds therefor his evidentiary objections previously mentioned. Defendant's motions were denied on the date of sentencing. Defendant's notice of appeal was filed October 22.

July 17, 1975, defendant moved this court to dismiss the charges against him on the ground the video tape introduced by the State as rebuttal evidence had been destroyed shortly after trial. Defendant argues destruction of the video tape deprives him of a complete record on appeal and constitutes "irreversible prejudice." By order dated July 28, 1975, this court ordered defendant's motion submitted with this appeal.

Defendant's contentions present the following issues for this court's review:

1. Did the trial court err in overruling defendant's motion to dismiss based upon his right to speedy indictment under section 795.1?

2. Did the trial court err in overruling defendant's motion to suppress the breath test results based upon an alleged violation of chapter 321B?

3. Did the trial court err in overruling defendant's objections to and motions to strike the testimony of the arresting officer and the State's chemist concerning the breath test results based upon allegedly defective test procedures?

4. Did the trial court err in permitting the State to show the video tape over defendant's improper rebuttal objection?

5. Under the facts and circumstances present herein is defendant entitled to a reversal and dismissal of the charges against him or reversal and new trial because of the prosecution's failure to preserve the video tape for appellate review?

■ I. Defendant's speedy indictment contention is without merit. The 30-day period referred to in section 795.1 does not begin to run until "a person is held to answer for a public offense." Defendant's argument that he was "held to answer" when he pleaded not guilty is refuted by many of this court's recent opinions. In *State v. Montgomery,* 232 N.W.2d 525, 526–527 (Iowa 1975), this court said:

" * * * In a number of cases we have held the term 'held to answer,' within the meaning of § 795.1, means 'held to answer by a magistrate after a preliminary examination or waiver of [the] same.' *State v. Mays,* 204 N.W.2d 862 (Iowa 1973); *State v. Morningstar,* 207 N.W.2d 772 (Iowa 1973); *State v. Sowle,* 218 N.W.2d 573, 574 (Iowa 1974); *State v. Lee,* 222 N.W.2d 471 (Iowa 1974); *State v. Thomas,* 222 N.W.2d 488 (Iowa 1974); *State v. Lyles,* 225 N.W.2d 124 (Iowa 1975); *State v. Emery,* 230 N.W.2d 521 (Iowa 1975). Under this definition defendant was never held to answer within the meaning of § 795.1."

No preliminary examination was ever held herein and defendant did not waive

that procedure. Under the interpretation of section 795.1, The Code, as adopted by a majority of this court, defendant was never "held to answer" within the meaning of this section and the 30-day period established therein was inapplicable to the proceedings against defendant. Defendant's motion to dismiss based on contrary assertions was properly overruled.

■ II. Defendant contends the arresting officer did not comply with the provisions of section 321B.3, The Code, 1973, in procuring defendant's breath specimen and the trial court erroneously overruled his motion to suppress based upon the alleged foundational defects in the breath test evidence. Specifically, defendant maintains there is no evidence he was first offered and refused the option of a blood test. In addition, defendant argues the trial court erred in refusing to determine the foundational issues outside the presence of the jury.

The State and defendant rely upon this court's opinion in *State v. Jensen,* 216 N.W.2d 369, 372 (Iowa 1974), as support for their contentions concerning compliance with the procedures established in section 321B.3, The Code. In the cited case this court said:

"The procedure required under section 321B.3, The Code (implied consent law) has become carefully defined. The standards for the procedure are as follows: (1) There must be a *written* request by the officer to the arrested driver for permission to take a blood test. (2) If the request for a blood test is refused the officer must then make a written request for a breath or urine test. (3) There must be a showing the officer is properly qualified under the statute to administer the test. (4) There must be proof the test was given by the use of devices and methods approved by the commissioner of public safety as provided by section 321B.4, The Code. * * * [citing authorities]."

However, unlike *Jensen,* the chemical test consent form utilized herein is not incomplete and indicates defendant was offered and refused the blood test option. The appropriate box on the form is checked to indicate defendant's refusal of the blood test and the place for defendant's signature contains the word "refused," the proper entry to be made in that space as directed by the form in the event the accused refuses to sign. The next section of the form manifests defendant's consent to the breath test and his signature is affixed thereto in the appropriate place. Defendant's trial testimony does not contradict the accuracy of the form.

In light of the above, defendant's contention foundation was lacking for the admission of the breath test for the reason he was not first offered and refused a blood test is without merit.

III. Defendant also attacks the trial court's rulings on the admissibility of the breath test results on other foundational grounds. Specifically, defendant argues there was no showing that the testing procedures and analysis used herein complied with section 321B.4, The Code.

Section 321B.4 provided in pertinent part as follows:

" * * * [A]ny peace officer, using devices and methods approved by the commissioner of public safety, may take a specimen of a person's breath or urine for the purpose of determining the alcoholic content of the person's blood."

In pertinent part section 321B.2 defined "peace officer" as follows:

"As used in this chapter the words 'peace officer' mean:

" * * *

"2. Police officers under civil service as provided in chapter 365.

" * * *

"5. Any other law enforcement officer who has satisfactorily completed an approved course relating to motor vehicle operators under the influence of alcoholic beverages at the Iowa law enforcement academy or a law enforcement training program approved by the department of public safety.

" * * *."

Defendant's objection in the trial court to admission of the test results basically challenged the competency of the arresting officer to administer the test and the method of testing itself.

■ Defendant's challenge to the testing method utilized herein can be summarily dismissed. The State's chemist, John Wilson, testified the method of breath analysis used in defendant's case, the Indium tube encapsulation crimper, had been approved by the department of public safety, citing "the Departmental Rules and Regulations, the Department of Public Safety, published July 1972. It is a supplement and it is on page 123." Wilson's citation was correct and thus defendant's contention cannot be sustained.

IV. Defendant's assigned error based upon Corporal Laufenberg's alleged failure to qualify as an individual competent to administer the breath test is likewise without merit. It is true the record contains no mention of Corporal Laufenberg having received the training described in section 321B.2(5) nor is his civil service status specifically referred to therein.

■ There are "two categories of facts [which] clearly fall within the perimeters of judicial notice, these being facts generally known with certainty by all the reasonably intelligent people in the community and facts capable of accurate and ready determination by resort to sources of indisputable accuracy." McCormick on Evidence, (Second Ed.), section 328.

■ This court may resort to the doctrine of judicial notice where the population of Iowa cities is involved when the population is evidenced by census reports. *Town of LeClaire v. Ahrens,* 195 N.W.2d 719, 720 (Iowa 1972); *re Condemnation of Land (Carroll County),* 255 Iowa 711, 724, 124 N.W.2d 141, 149; *Miehls v. City of Independence,* 249 Iowa 1022, 1029, 88 N.W.2d 50, 54. The 1970 census report shows Clinton to be a city with a population of 34,719. Statutes of this state are likewise subject to the exercise of judicial notice. Rule 94, Rules of Civil Procedure; *Coleman v. Hall,*

161 N.W.2d 329, 332 (Iowa 1968); *State ex rel. LeBuhn v. White,* 257 Iowa 606, 608, 133 N.W.2d 903, 904.

■ This court takes judicial notice of the fact the city of Clinton is subject to the provisions of chapter 365, The Code, 1973 (chapter 400, The Code, 1975). Since nothing in this record establishes otherwise, it is presumed the city officials have complied with the provisions of chapter 365. *Joneson v. Joneson,* 251 Iowa 825, 830, 102 N.W.2d 911, 913; *Interstate Power Co. v. McGregor,* 230 Iowa 42, 53, 296 N.W. 770, 776, 146 A.L.R. 315. See also *State v. Hellickson,* 162 N.W.2d 390, 394 (Iowa 1968); *State v. Houston,* 261 Iowa 1369, 1374, 158 N.W.2d 158, 161; *Thrasher v. Haynes,* 221 Iowa 1137, 1141, 264 N.W. 915, 917. Consequently, this court concludes that Corporal Laufenberg, who at time of trial had been a member of the Clinton Police Department for over six years, was a "peace officer" under the provisions of section 321B.2 and was therefore qualified to take a breath sample from defendant under section 321B.4.

■ V. Defendant next contends the trial court erred in permitting the State to show the video tape to the jury in rebuttal. Specifically, it is argued the video tape was entirely repetitive of the evidence introduced by the State in its case-in-chief.

In *State v. Nelson,* 261 Iowa 204, 208–209, 153 N.W.2d 711, 714–715, is the following with respect to the general principles applicable to rebuttal evidence:

" * * * [T]he fact testimony used in rebuttal might have been used as part of the State's main case does not render it inadmissible in rebuttal if it rebuts some of the matters testified to by defendant's witnesses. * * * [citing authority]. * *

"As the State points out, we have also held several times the trial court has discretion to admit in rebuttal evidence which should have been offered in chief that is not strictly rebuttal. * * * [citing authority.] * * *

" * * *

"We recognize the general rule that the trial court has a good deal of discretion in determining what is proper rebuttal testimony. * * * [citing authorities]. * *

"Rebutting evidence is that which explains, repels, controverts, or disproves evidence produced by the other side. * * * [citing authorities].

" * * * *

"In 23 C.J.S., Criminal Law, section 1050a, page 1215, contains this: 'Evidence which has no direct tendency to impeach, contradict, explain, or otherwise rebut evidence is not admissible on rebuttal.'" These general principles are supported by the following cases: *State v. Miller,* 229 N.W.2d 762, 770 (Iowa 1975); *State v. Walker,* 218 N.W.2d 915, 919 (Iowa 1974); *State v. Willey,* 171 N.W.2d 301, 302 (Iowa 1969).

In the case before us defendant testified, contrary to the testimony of Corporal Laufenberg, that he was not able to see the papers placed before him and merely signed his name where he was told, he was unaware any filming was going on and he felt he was able to negotiate the tests of coordination fairly well. In rebuttal the State offered the video tape in an obvious attempt to "repel, controvert, or disprove" defendant's testimony. This was proper rebuttal and was similar to the evidence approved in *State v. Johnston,* 252 Iowa 335, 340, 105 N.W.2d 700, 702. In that case, defendant's testimony contradicted previous testimony of the sheriff and the State, in rebuttal, introduced evidence supporting the sheriff's version of events and controverting defendant's. In holding the rebuttal evidence was proper, this court said:

" * * * [The rebuttal witness'] evidence was clearly rebuttal. It negatived testimony given by defendant. It is true it might have been offered by the State as part of its main case. But this did not render it inadmissible in rebuttal. 'It many times occurs that testimony used in rebuttal might have been used by the State as direct testimony in the first instance; yet, if in fact it was not so used, but in reality it does

rebut some of the matters testified to by the defendant or his witnesses, it should be classed as rebutting testimony.' * * * [citing authorities].

" * * * 'It often happens on a trial that a party may reasonably suppose that a fact prima facie shown on the direct examination, will stand as unquestioned * * *, with other evidence at hand to sustain it. In such a case, if it is contradicted, the court may properly permit the other party to offer additional evidence. It is a discretionary matter.' * * * [citing authorities]."

Defendant's reliance on *People v. Crump,* 5 Ill.2d 251, 125 N.E.2d 615, 623, 52 A.L.R.2d 834, is misplaced in light of peculiar factual circumstances present therein and alluded to by the court.

In light of the above authorities, it is our view defendant has not established an abuse of the trial court's discretion in determining the parameters of appropriate rebuttal.

VI. The final issue presented for this court's review stems from the apparently inadvertent destruction of the video tape of defendant's conduct in the Law Enforcement Center on the evening of his arrest. Defendant contends the destruction of the tape entitles him to a dismissal of the charges against him or, at the very least, a new trial.

Defendant's request for dismissal of the charges against him is unsupported by the authorities cited in his brief. Independent research has likewise discovered no case which supports defendant's requested dismissal.

Pertinent to the resolution of defendant's request for a new trial is this court's opinion in *State v. McKee,* 223 N.W.2d 204, 206 (Iowa 1974), wherein such relief was denied notwithstanding the fact the reporter's notes were lost. Defendant's contention therein was discussed as follows:

" * * * Defendant charges in his argument that the trial court did not permit proper allocution and that he cannot set out

the proceedings because the reporter's notes are lost.

"We cannot assume that the court did not afford defendant his right of allocution; the presumption is the other way. * * * [citing authorities]. In the absence of the reporter's transcript, defendant could not fill the void by merely asserting facts in argument. The statute provides a procedure for such situations, the bill of exceptions. Code 1973, §§ 786.5–786.9. Defendant did not take advantage of that procedure. We do not have a record on which to pass on his contention. * * * [citing authority].

*"The unavailability of a reporter's transcript does not ipso facto entitle an accused to a reversal if a fair substitute is available and the State is not guilty of chicanery. * * * [citing authorities].* Defendant does not suggest chicanery here, and a bill of exceptions appears an adequate device to raise the matters he argues, if in fact they occurred. * * * [citing authority]. We do not sustain defendant's second contention." (Emphasis supplied).

Defendant neither asserts chicanery on the part of the State nor has he demonstrated that a fair substitute for the missing evidence is not available.

His reliance upon *Andrew v. Farmers Tr. & Sav. Bank,* 206 Iowa 1368, 222 N.W. 553, and *Dumbarton Realty Co. v. Erickson,* 143 Iowa 677, 120 N.W. 1025, is misplaced. The former is inapplicable hereto and the latter is, if anything, contrary to defendant's position. His contention is without merit.

Each of defendant's contentions asserted in support of reversal has been considered and found to be without merit.

The case is therefore—Affirmed.