**IN THE COURT OF APPEALS OF IOWA**

No. 23-0330
Filed October 11, 2023

**IN THE INTERST OF B.O., K.O., and K.O.,**
**Minor Children,**

**K.C., Mother,**
    Petitioner-Appellee,

**T.O., Father,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

    A father appeals the private termination of his parental rights. **AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**

    Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant.

    Eric R. Eshelman, Ankeny, for appellee.

    Deborah L. Johnson, Altoona, attorney and guardian ad litem for minor children.

    Considered by Bower, C.J., and Buller and Langholz, JJ.

**BOWER, Chief Judge.**

The father's parental rights to his three children, a child born in 2016 and twins born in 2018, were terminated in this private termination proceeding on grounds of incarceration and nonpayment of child support. On appeal, he contends the trial court improperly considered matters after the trial, the mother did not prove the grounds for termination, and termination of his rights is not in the children's best interests. Because the mother proved a ground for termination and we conclude termination of the father's parental rights is in the children's best interests, we affirm.

After ongoing substance use, domestic violence, and criminal activity, on November 5, 2020, the father was arrested on a warrant issued for failure to appear at a contempt hearing for failing to pay child support. On December 14, 2020,[1] his probation was revoked for

> failing to attend the Iowa Domestic Abuse Programming classes, failing to attend drug treatment, continued use of methamphetamine, violating curfew on five (5) separate occasions, violating conditions for GPS monitoring on five (5) separate occasions, and living with other probation/parolees without notifying probation officer and/or getting approval before changes were made.

The father was sentenced to a period of incarceration not to exceed thirty years, with credit for time served. He is currently serving his prison term with a tentative discharge date of 2033, though he became eligible for parole in 2022.[2]

---

[1] The father was on probation on a number of charges from three different criminal proceedings: one count of second-degree burglary, one count of third-degree burglary, possession of a firearm by a prohibited person, forgery, domestic abuse assault causing bodily injury, possession of controlled substance-second offense, and failure to affix a tax stamp.

[2] The father challenges the district court's taking judicial notice that he was denied parole in December 2022. We note it was the father who urged the court to

On June 7, 2021, the mother filed a petition to terminate the father's parental rights under Iowa Code section 600A.8 (2021) on grounds of abandonment, as that term is defined in subsection (3); nonpayment of ordered child support under subsection (4); and imprisonment under subsection (9).

On August 1, 2022, the children's guardian ad litem (GAL) filed a nine-page report, five pages of which contain an outline of the father's "involvement with the criminal system" between February 2018 and December 14, 2020, ending in the imposition of the thirty-year term of imprisonment.[3]  The GAL opined it is in the best interests of the children to terminate the father's parental rights as the father "made a conscious choice to engage in crimes over a span of years, resulting in incarceration, at the expense of being able to be a presence in his children's lives." The GAL noted the father had not seen the children since March 2019.

---

consider his eligibility for parole as a factor in these proceedings; his availability as a parent is at issue.

> Our supreme court has stated:
>> There are "two categories of facts (which) clearly fall within the perimeters of judicial notice, these being facts generally known with certainty by all the reasonably intelligent people in the community and facts capable of accurate and ready determination by resort to sources of indisputable accuracy."  McCormick on Evidence, (Second Ed.), section 328.

*State v. Proulx*, 252 N.W.2d 426, 431 (Iowa 1977).  The parole board's decisions are readily determined by accessing public information on their website: https://bop.iowa.gov/.  The father does not assert that information is inaccurate.  In any event, the district court's discussion of the parole denial is harmless and immaterial on appeal, as we affirm on the failure-to-support alternative of section 600A.8(4).

[3] The father's criminal history did not begin in 2018.  Additional criminal involvement is noted in an Institution Court Progress Report dated September 20, 2022.  The report includes adult criminal involvement beginning in 2007.  The mother and father both testified he went to prison shortly after the mother and father's relationship began in 2011 and he was paroled in 2014.

At trial, which was held September 14, September 15, and December 5, 2022, the court heard the testimony of the mother, maternal grandfather, the paternal grandmother, and the father. On February 3, 2023, the district court terminated the father's parental rights pursuant to Iowa Code section 600A.8(4) (allowing termination if "[a] parent has been ordered to contribute to the support of the child or financially aid in the child's birth and has failed to do so without good cause"), and section 600A.8(9) (allowing termination if "the parent has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years").

The court explicitly rejected a finding of abandonment under section 600A.8(3), which allows termination if a child is over six months of age and the parent fails to "maintain[] substantial and continuous or repeated contact with the child[ren] as demonstrated by contribution toward support of the child[ren] of a reasonable amount, according to the parent's means" *and* regularly visits or communicates with the children. The court found:

> Although . . . his incarceration is good cause for providing a lower amount of support, as noted above, when [the father] was granted probation from June 2020 until it was revoked in December 2020, he failed to provide any economic or financial support at all to the children and prioritized other needs or desires, including methamphetamine use.
> [The father's] lack of reasonable support is sufficient grounds to support abandonment and, therefore, the [court] need not find that [the father] has failed to communicate regularly with the children. In this particular case, the court does not find that failure to communicate has been established. [The father] is legally prohibited from any means of contact with his children. Although he made the choices that placed him in prison, he has no mechanism to legally contact the children and is prevented from doing so by [the mother]. [The mother] has good reason to be protected by numerous No Contact Orders, but she is unwilling to allow any means for [the father] to send mail or cards or talk to the children, such as through

his mother. Instead, she has cut off contact between [the father's] family members who still see [him] and the children. Therefore, the court cannot find that this prong has been met.

The court then turned to whether termination of the father's parental rights was in the children's best interests. The court carefully considered the circumstances, which it summarized:

> The court is hopeful that [the father] will continue to change his outlook toward accepting responsibility for his own actions and past behavior and that he will learn to be become a stable member of society. The court has no doubt that [the father] is sincere in his desire to remain a father to the children and to change his thinking. However, the court cannot refuse to terminate parental rights based only on that hope. "It is well-settled law that we cannot deprive a child of permanency after the [petitioner] has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." [*In re*] *B.H.A.*, 938 N.W.2d [227,] 232 [(Iowa 2020)] (citation omitted).
>
> [The father] has created a situation where he is unable to parent his children because of incredibly poor and dangerous decision-making. [The father] repeatedly used the children as hostages, taking them from [the paternal grandmother] or [the mother] and then forcing [the mother] to try to get the children back. This was during a time period when he was likely also using illegal substances and did not have a valid driver's license. [The father] refused to abide by No Contact Orders and created a dangerous situation for the children. Before he was incarcerated, [the father]'s presence in the children's lives was not as someone who had assumed the responsibilities or duties of a parent. [The father] has now been absent from his children's lives for nearly four years, most of B.M.O.'s life and nearly all of K.T.O. and K.D.O.'s lives, due to his own decision-making.
>
> The court is disappointed in [the mother's] decision to prohibit [the father]'s family from having a relationship with the children. However, [the father]'s extended family does not have a legal right to the children and [the father] has not assumed his role as a parent. Hopefully, future healing and progress might allow the children to know [the father]'s family, but, ultimately, that hope does not outweigh the considerations of the children's current financial and emotional stability. [The mother] has been a solid presence and provider in the children's lives and her family provides a strong support system.

Our review of private termination-of-parental-rights proceedings is de novo. *B.H.A.*, 938 N.W.2d at 232. When interpreting chapter 600A, the children's best interests "shall be the paramount consideration" but the parents' interests "shall be given due consideration." Iowa Code § 600A.1(1). In *B.H.A.*, our supreme court discussed the analysis governing private termination of parental rights: "Private termination proceedings under Iowa Code chapter 600A are a two-step process." 938 N.W.2d at 232. First, the petitioner must "prove by clear and convincing evidence the grounds for ordering termination of parental rights." *Id.* The petitioner must also prove by clear and convincing evidence termination is in the children's best interests. *Id.*

> For private termination proceedings, the Iowa legislature defined the concept of "best interest of a child" as the following:
>> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.
>
> Iowa Code § 600A.1. This court has also borrowed from the statutory best-interest framework outlined in Iowa Code chapter 232. That framework directs this court to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child[.]" Iowa Code § 232.116(2). Of importance is the child's emotional and psychological health, *see id.*, and the closeness of the parent–child bond, *see id.* 232.116(3)(c). Finally, this court has said, "It is well-settled law that we cannot deprive a child of permanency after the [petitioner] has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."

*Id.* (alteration in original) (internal case citations omitted).

The father contends on appeal the trial court incorrectly found that the mother proved abandonment pursuant to Iowa Code section 600A.8(3) and non-support pursuant to Iowa Code Section 600A.8(4). We already noted the court specifically found section 600A.8(3) was *not* proved—we assume the decretal statement the father's parental rights "are hereby terminated pursuant to Iowa Code section 600A.8(3), (4), and (9)" contains a typographical error, which can be corrected by issuing a nunc pro tunc order and we remand for the court to do so.

But we find no error in the trial court's finding the father "has been ordered to contribute to the support of the child[ren] . . . and has failed to do so without good cause." Iowa Code § 600A.8(4). Though the parties disagree on the father's support of the family during much of their relationship, the father prioritized his drug use throughout, and he admits that but for the state-mandated garnishment, he has not paid support since March 16, 2019. On our de novo review, we find there is clear and convincing evidence to support this ground for termination. *See B.H.A.*, 938 N.W.2d at 234 (finding the father failed to provide financial support and "cho[se] instead to support his drug addiction"). Section 600A.8 states, "The following shall be, either *separately or jointly*, grounds for ordering termination of parental rights: . . . ." (Emphasis added.) Because a single ground is sufficient, we need not discuss whether there is clear and convincing proof "it is unlikely that the parent will be released from prison for a period of five or more years."[4] *See* Iowa Code § 600A.8(9).

---

[4] In any event, we have previously declined to speculate on the early release of incarcerated persons. *See In re M.J.P*, No. 15-1279, 2016 WL 4396108, at *1–2 (Iowa Ct. App. Aug. 17, 2016) (affirming juvenile court's finding it would not speculate on whether the father would be successful in his bid to be paroled early

Turning to whether termination is in the children's best interests, the father asserts he had a bond with the oldest child, he continues his desire to be their father, and "there is no one to adopt these children." He argues, "The children will be left with a one-parent household for the rest of their adolescent lives and have no prospect of support from a second parent." So, in the father's view, it is a better alternative to have a possible secondary financial provider when he is released. We cannot agree.

First, whatever bond the father had with the eldest of the three children has certainly been eroded by his absence since 2019. He has no bond with the twins. We do not know when the father will be released nor what kind of financial provider he will be when released. We will not speculate about the next decade or so of the children's adolescence. Rather, we focus on the children's best interests, and we find the children are emotionally and financially supported by their mother. She and the children have the support of her family. We affirm, but we remand to the district court for the limited purpose of allowing it to issue a nunc pro tunc order to correct the clerical error in the written ruling.

**AFFIRMED AND REMANDED FOR ENTRY OF NUNC PRO TUNC ORDER.**

---

where release date was in five years and four months); *In re S.W.*, No. 22-1503, 2023 WL 153517, at *1 (Iowa Ct. App. Jan. 11, 2023) (declining to speculate regarding whether the father would be successful in obtaining release in less than five years either through an appeal or through changing federal drug laws). Here the father's tentative discharge date is 2033—far in excess of five years.