**STATE of Iowa, Appellee,**

v.

**Elmer Eugene CARTEE, Jr., Appellant.**

**No. 55279.**

Supreme Court of Iowa.

Nov. 15, 1972.

Dale A. Johnson, Fort Dodge, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., and David A. Opheim, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and REYNOLDSON, JJ.

RAWLINGS, Justice.

Trial jury found defendant, Elmer Eugene Cartee, Jr., guilty of murder in the second degree. He appeals from judgment consequently entered. We affirm.

Since the instant conviction is, in large part, predicated on circumstantial evidence a relatively extended summary of the factual situation is necessitated. This is the record as best determinable from an involved array of testimony, absent any evidence by defendant.

October 12, 1968, Cartee took his wife, Angeline, and their children to a Fort Dodge drive-in theater. Mr. and Mrs. Cartee there consumed some whiskey. They left about 10:00 P.M. and drove to a point near Otho. There, for some unknown reason, the car stalled and rolled back into an adjacent roadway ditch.

Randy Cartee, then eight, testified his mother was sitting next to the door at time of the incident. He heard something on his mother's side and thought her head may have struck the windshield. The boy said he saw defendant hit Mrs. Cartee and heard her instantaneous expression of pain.

Four men stopped and offered to call a wrecker. Mrs. Cartee was then "mad about something" but appeared to be all right. The four men left, but on their return a short time later found Angeline "different than she acted before", had blood on her chin and cheek, and was crying. These men took the Cartees to their home, then located on the second floor of a house owned by William Bass, defendant's brother-in-law. About 1:00

A.M. Cartee talked to Bass, then went upstairs, but returned about five minutes later and told the brother-in-law to call an ambulance. Bass went to the second floor and there saw Angeline lying on a cot on her back. There was blood on her lips and water on the floor.

Mrs. Bass testified Angeline's mouth was cut and it looked as if someone had slapped her.

The ambulance and several policemen arrived. One officer witness, Anderson, stated Mrs. Cartee had no pulse, her right eye was blackened, blood trickled from the left corner of her mouth, and the left side of her face was swollen.

Another policeman, Hefley, testified to the same effect and that some of Mrs. Cartee's teeth were missing. Later that morning Hefley examined the Cartee automobile. He found a crack in the windshield which started at the mirror and went nine and a half inches toward the left side of the car. This crack was seven inches from the top of the windshield. There were also hairline scratches on the windshield and marks on the garnish molding covering the headliner and rubber insert on the windshield. It appeared to Hefley something had come out of the back seat, hit the windshield and caused the break. On redirect examination he stated it would have been difficult for Mrs. Cartee to hit her head on the windshield because of the way the dashboard stuck out.

James Nolan, a Webster County Deputy Sheriff, testified the day after the accident he found a partial plate of false teeth approximately 500 feet from where the Cartee vehicle had gone into the ditch.

Mrs. Cartee was pronounced dead on arrival at the hospital.

Dr. William A. Sybers conducted an autopsy and testified he found considerable hemorrhage on both sides of the brain, referred to as trauma caused subdural hematoma. He also stated that this injury caused the deceased to vomit and her vomiting caused aspiration. Dr. Sybers did not find the counter force situation generally associated with automobile accidents.

Defendant submitted to a polygraph test and stipulated it could be used in evidence. See State v. Galloway, 167 N.W.2d 89, 94-95 (Iowa 1969); Annot., 95 A.L.R. 2d 819. This test was conducted by Robert Lee Voss, an experienced polygraph examiner employed by the State Bureau of Criminal Investigation. He testified the test tracings indicated Mr. Cartee was lying when he said he did not strike his wife more than once while on the Kalo blacktop. He answered "No" to the question: "Did you strike your wife after you arrived back at your residence?" The tracings indicated he was lying about this. Voss asked Mr. Cartee: "Have you told your attorney the complete truth about this matter?" This time Cartee said "Yes". The tracings indicated he had not told his attorney the complete truth. Voss also testified that subsequent to the examination defendant stated he had struck his wife twice while on the Kalo blacktop, once with the open hand and once with his fist. He said he did not slap his wife after they got back to the residence but left to get his car, returned home, and at this time slapped his wife, as he remembered it, with his open hand in an attempt to revive her. Voss then opined the test showed Cartee was not telling the complete truth.

On appeal it is contended trial court committed reversible error in (1) permitting eight year old Randy Cartee to testify in that he was not shown to be competent, (2) failing to sustain defendant's directed verdict motion based on insufficiency of evidence to generate a jury question, (3) instructing the jury, without request, no inference could be drawn from defendant's failure to testify.

■ I. The first assignment regarding Randy's competency to testify must be resolved adverse to defendant under our holdings in State v. Hackett, 200 N.W.2d 493-494 (Iowa 1972), and cases cited. See

also 2 Wigmore on Evidence, §§ 505–509 (3d ed.) ; 6 Wigmore on Evidence, § 1821 (3d ed.) ; 1 Underhill's Criminal Evidence, § 257 (5th ed.)

■ Furthermore, Randy's competency is not refuted by mere testimonial inconsistency, going more to the weight to be accorded his evidential statements by the fact finding body. See 2 Wigmore on Evidence, §§ 487–488 (3d ed.) ; 30 Am.Jur.2d, Evidence, § 1082. See also State v. Fields, 199 N.W.2d 144, 146 (Iowa 1972) ; State v. Masters, 196 N.W.2d 548, 551 (Iowa 1972) ; Youngwirth v. State Farm Mut. Auto. Ins. Co., 258 Iowa 974, 981–982, 140 N.W.2d 881 (1966) ; 32A C.J.S. Evidence § 1026.

II. Next to be considered is Cartee's claim regarding insufficiency of evidence for submission of this case to a jury.

In resolving that issue we invoke some well established guiding criteria.

FIRST: "In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge." State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972).

SECOND:

"[O]n appeal from conviction based on a jury verdict challenging sufficiency of evidence to sustain the verdict, the evidence is viewed in that light most favorable to the State and we accept as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. Also, it is for the fact finder, not us, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record.

(Authorities cited)." State v. Gilroy, 199 N.W.2d 63, 66 (Iowa 1972).

THIRD: Circumstantial evidence may " * * * be equal in value and sometimes more reliable than that which is direct. Where, however, circumstantial evidence alone is relied on as to an essential element, the circumstance or circumstances must be entirely consistent with defendant's guilt, wholly inconsistent with any rational hypothesis of his innocence, and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. Like direct evidence it must raise a fair inference of guilt, generating something more than suspicion, speculation or conjecture. (Authorities cited)." State v. Gilroy, 199 N.W.2d at 67.

FOURTH:

"[I]n considering claimed insufficiency of evidence to sustain a conviction we view all evidence in that light most favorable to the State, and accept as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. Also, it is for the fact finder, not us, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record. (Authorities cited)." State v. Fields, 199 N.W.2d 144, 146–147 (Iowa 1972).

■ Viewed in light of the foregoing criteria the record discloses sufficient evidence upon which the jury could fairly find: Defendant struck his wife several times; immediately after the Cartee automobile rolled into a ditch Mrs. Cartee was angry but appeared to be all right; a short time later there was blood on her face, she spoke slurringly and was crying; when subsequently seen on a cot at home there was a cut on Mrs. Cartee's mouth, blood on her lips, her right eye was blackened,

the left side of her face swollen and she had no pulse; defendant repeatedly gave false answers in the course of a polygraph test, but later admitted having assaulted his wife; and her death resulted from a trauma induced subdural hematoma.

The foregoing does more than generate suspicion, conjecture and speculation. It clearly discloses adequate substantive evidence from which the jury could reasonably conclude Cartee, at the time here concerned, inflicted death-causing injuries to his wife.

Despite defendant's assertion to the contrary we are satisfied and hold, the verdict finding defendant guilty of murder in the second degree is adequately supported by the whole record.

III. The question next presented is whether trial court committed prejudicial error by instructing the jury, absent defendant's objection or request, no inference should be drawn from his failure to testify.

■ At the outset it must be noted this matter was never raised in the trial court by exceptions to instructions given, requested instructions, motion in arrest of judgment, or motion for new trial. Resultantly defendant did not preserve the alleged error. See State v. Hraha, 193 N. W.2d 484, 485–486 (Iowa 1972); State v. Masters, 171 N.W.2d 255, 258 (Iowa 1969).

IV. But he now argues the instant instruction constituted an invasion of his rights under the Fifth Amendment of the United States Constitution and he was thus, in effect, denied a fair trial.

■ In that regard this court has repeatedly held a finding of guilt will not be permitted to stand if, upon examination of the record pursuant to Code § 793.18, it appears an accused was not accorded a fair trial. E. g., State v. Masters, 171 N.W.2d

at 258; State v. Horrell, 260 Iowa 945, 953–956, 151 N.W.2d 526 (1967); cf. Boykin v. Alabama, 395 U.S. 238, 241, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966); State v. Rankin, 181 N.W.2d 169, 171 (Iowa 1970); State v. Wisniewski, 171 N.W.2d 882, 886–887 (Iowa 1969). This necessitates a correspondent evaluation of the issue.

Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), holds the Fifth Amendment, bearing on the states by reason of the Fourteenth Amendment, forbids either comment by the prosecution on an accused's silence or instruction by the court that such silence is evidence of guilt. See also State v. Raymond, 258 Iowa 1339, 1343, 142 N.W.2d 444 (1966).

The foregoing does not, however, specifically reach the problem now before us.

Demonstratively the court commented in *Griffin*, 380 U.S. at 616, 85 S.Ct. at 1233, n. 6: "We reserve decision on whether an accused can require, as in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257, that the jury, be instructed that his silence must be disregarded."

Subsequently this court said in State v. Wallace, 261 Iowa 104, 111, 152 N.W.2d 266, 270 (1967):

"We now hold, when a defendant objects it is the better practice to give no instruction whatsoever relative to his failure to testify, but the giving of an instruction, absent objection by defendant, to the effect no inference of guilt or innocence be drawn by the jury from his failure to testify, does not constitute prejudicial error."

See also Sullivan v. Scafati, 428 F.2d 1023, 1025 (1st Cir. 1970); United States v. Jones, 406 F.2d 1297, 1298 (9th Cir. 1969); United States v. Garguilo, 310 F.2d 249,

252 (2d Cir. 1962); People v. Brown, 253 Cal.App.2d 820, 61 Cal.Rptr. 368, 374 (1967); State v. Emrick, 278 A.2d 712, 713–714 (Vt.1971). See generally Annots., 35 A.L.R.3d 1093; 18 A.L.R.3d 1335; cf. State v. Osborne, 258 Iowa 390, 393, 139 N.W.2d 177 (1965); 8 Wigmore on Evidence, § 2272 at 436 (McNaughton rev.).

We later announced, however, in State v. Kimball, 176 N.W.2d 864, 869 (Iowa 1970):

"Because of the divergent opinions in this sensitive area and as the giving of even a cautionary instruction favorable to defendant may violate the spirit of Griffin v. State of California, supra, we believe it is advisable for us to take a definitive position on this issue. We now hold that such instruction should not be given *in any future trial* unless it is requested by defendant, and that it will be considered error if it is given, absent such request, in any trial started after the date this opinion is filed." (Emphasis supplied).

Noticeably the principle voiced in *Kimball* (1970) was made only prospectively applicable. See Tehan v. United States ex rel. Shott, 382 U.S. 406, 412–419, 86 S. Ct. 459, 463–467, 15 L.Ed.2d 453 (1966). And the case at bench was tried in December 1968, defendant then being, presumably, aware of our 1967 Wallace holding, quoted above.

It is therefore only proper that the issue at hand be resolved in light of the *Wallace* standard, quoted above, which was in effect at time of the instant trial. See Procunier v. Atchley, 400 U.S. 446, 452, 91 S.Ct. 485, 489, 27 L.Ed.2d 524 (1971).

We now hold, submission of the questioned instruction did not serve to deny defendant a fair trial.

Affirmed.