STATE of Iowa, Appellee,

v.

Robert E. SWANSON, Appellant.

No. 57396.

Supreme Court of Iowa.

April 16, 1975.

Barnes, Schlegel & Walter, Ottumwa, for appellant.

Richard C. Turner, Atty. Gen., Gary A. Ahrens, Asst. Atty. Gen., Des Moines, and Samuel O. Erhardt, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

Defendant was charged by indictment with the crime of rape in violation of section 698.1, The Code, 1973. Following his plea of not guilty, he was tried to a jury, found guilty and sentenced to a term of 20 years imprisonment. He now appeals. We affirm.

On October 26, 1973 Barbara Sue Meredith, who was babysitting with the two children of her sister Marcia Six at her sister's apartment, received a telephone call from a man who identified himself as Greg Benton. The caller asked to speak to Marcia. Told she was not home, he then made arrangements with Barbara Sue to summon Marcia to the apartment. Barbara Sue then tried to contact Marcia but was unsuccessful in doing so.

The caller, defendant Robert Swanson here, later arrived at the apartment and Barbara Sue recognized him as a man who had offered her a ride in his automobile on a previous occasion. Marcia's children, aged 4 and 8, were in the apartment at the time. After securing a beer, defendant sat down and watched television with Barbara Sue. He later coerced her into going to a bedroom by squeezing her neck and threatening her life, and there forced her to have intercourse. He then left the apartment.

Barbara Sue subsequently called her sister and summoned the police. When the police arrived at the apartment she identified defendant as Greg Benton. She was then taken to a hospital for medical examination.

Several hours later, at 5:25 a. m., October 27, 1973 police officers McElroy and Boettcher called defendant, with whom they had prior contact, at his home in Douds, Van Buren County, and asked him to appear at the Ottumwa police station. Defendant arrived at the police station a short time later. After being read the so-called Miranda warnings, he signed a standard waiver form. He then acknowledged raping Barbara Sue Meredith.

At trial Barbara Sue identified defendant as the man who raped her and who had on the night in question introduced himself as Greg Benton. Vernon Six, the older of her two nephews present in the apartment with her, testified he had seen defendant in the apartment at or about the time the rape allegedly occurred. Dr. Wetrich, the physician who examined Barbara Sue at the hospital following the alleged rape, testified he found a small bruise on her neck and evidence of intercourse within the prior 24-hour period. Officers McElroy and Boettcher testified concerning defendant's confession at the police station.

Defendant states the following issues for review:

(a) Trial court erred in overruling defendant's objection to the competency to testify of the 8-year old witness, Vernon Six.

(b) Trial court erred in admitting into evidence hearsay statements made by the complaining witness.

(c) Trial court erred in admitting into evidence the alleged involuntary confession of defendant.

(d) Trial court erred in imposing an excessive sentence upon defendant, after allegedly improperly considering statements by the prosecutor that defendant had admitted commission of other crimes.

■ I. Defendant's contention trial court erred in overruling defendant's objection to the competency to testify of Vernon Six, aged 8, is without merit. Vernon was preliminarily interrogated at some length by trial court and by counsel in the absence of the jury, and trial court found him qualified to testify. He was then sworn and testified before the jury. We find no reversible error and no abuse of discretion by trial court. See State v. Cartee, 202 N.W.2d 93, 95–96 (Iowa 1972); State v. Hackett, 200 N.W.2d 493, 494 (Iowa 1972), and cases there cited.

II. We next consider defendant's contention trial court, over his objection, im-properly admitted hearsay testimony of Officers McElroy and Boettcher as to statements Barbara Sue made to them shortly after they arrived at the Six apartment.

The record discloses the alleged rape occurred well after eleven o'clock, p. m. and possibly after midnight. After defendant left the apartment, Barbara Sue immediately contacted her sister, who came directly to the apartment and to whom Barbara disclosed she had been raped by a man identifying himself as Greg Benton. The officers were then called to the apartment where they arrived at 12:50 a. m. The record thus reflects that something less than a hour's time elapsed between the occurrence of the alleged rape and the statements made by Barbara Sue to the police officers.

The record further reflects the fact Barbara Sue was examined by Dr. Wetrich in the out-patient department of the Ottumwa hospital at about 2 a. m. Both police officers and Dr. Wetrich variously testified that Barbara, when they first saw her, was "emotional, upset, crying and sobbing", "hysterical" and "very distraught". Defendant does not complain of the observations of Dr. Wetrich as to the emotional state of Barbara Sue at the time he examined her.

Clearly, the testimony of Officers McElroy and Boettcher was hearsay. The State, however, contends the *res gestae* exception to the hearsay rule renders the testimony of the officers as to statements made by Barbara Sue admissible.

■ In State v. Grady, 183 N.W.2d 707, 718 (Iowa 1971), we adopted the following rule:

"Henceforth, in a prosecution for rape the state is not privileged to prove that the prosecutrix complained any particular person assaulted her until after defendant has brought out particulars of the details of the complaint or has introduced evidence tending to impeach in any respect the female or witnesses testifying to the complaint unless the complaint was

a spontaneous, unpremeditated statement so closely connected with the act as to be part of the *res gestae*." (see citations).

■ The admissibility of Barbara Sue's statements to the police officers as part of the *res gestae* was largely within the trial court's discretion. See State v. Crawford, 202 N.W.2d 99, 101 (Iowa 1972), and citations. The trend is to extend, rather than to narrow the *res gestae* doctrine. See State v. Crawford, *supra* at 101.

■ The statements of the prosecutrix, testified to by the police officers, meet the *res gestae* admissibility standards we have adopted, *i. e.*, (1) spontaneity and (2) such closeness of connection with the transaction as to exclude any presumption of fabrication. State v. Crawford, *supra* at 101; State v. Smith, 195 N.W.2d 673 (Iowa 1972); Gibbs v. Wilmeth, 261 Iowa 1015, 157 N.W.2d 93; State v. Miller, 254 Iowa 545, 117 N.W.2d 447.

The foregoing cases are factually comparable to the case before us. Applying the *res gestae* standards set out in those cases, we are persuaded trial court did not abuse its discretion in overruling defendant's objections to the testimony of Officers McElroy and Boettcher concerning the statements of Barbara Sue. We also observe the admission of her statements through the testimony of the police officers did not offend the rule enunciated in State v. Grady, *supra*.

This contention of defendant is without merit.

III. Defendant's next contention is that trial court erred in admitting evidence of the oral confession he made at the Ottumwa police station to Officers McElroy and Boettcher.

Defendant was called at his home in Douds at about 5:25 a. m., April 27, and reported to the officers at the police station about an hour later. There Officer McElroy read to him the standard form Miranda warning and presented him with a card bearing the same. Defendant offered his signature to the card after answering affirmatively, in writing, the following questions:

1. "Do you understand each of the rights I have explained to you?"
2. "Having these rights in mind, do you wish to talk to us now?"

At trial Officer McElroy was examined out of the presence of the jury.

The following questions and answers appear in the record as a part of his examination:

"Q. And prior to reading him the Miranda rights, from State's Exhibit # 1, did you have any conversation with this defendant regarding that he obtain an attorney?

"A. This came at the point in our conversation where he was responsive to me and I advised him that I thought he should contact his attorney or an attorney. This occurred several other times."

"Q. What did he say to the question?

"A. That he didn't know an attorney, and he didn't know what to do; that he didn't want to go to jail; and as I said, 'Well, we can't proceed on that basis. I can't talk to you on that basis.' He said, 'Well, I don't want to have an attorney.' Then we got into the questioning."

■ We incline to the view the interrogation of defendant by the police officers at the Ottumwa police station was a "custodial interrogation". We recognize that the absence of counsel at such a custodial interrogation places on the State a heavy burden of proving any inculpative statements made by the defendant under the circumstances were voluntary. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724; State v. Cullison, 215 N.W.2d 309, 314 (Iowa 1974). The State is required to show that any statements of defendant were made pursuant to a knowing and intelligent waiver by him of his rights. The issue of waiver is to be determined sepa-

rately from the issue of voluntariness, and must be supported by a preponderance of the evidence. See Schneckloth v. Busta-monte, 412 U.S. 218, 238, 93 S.Ct. 2041, 2053, 36 L.Ed.2d 854, 869; see also Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618, 627; and State v. Fet-ters, 202 N.W.2d 84, 88 (Iowa 1972).

■ Both police officers testified that prior to executing the written waiver de-fendant was advised to secure the services of counsel. Defendant was 24 years of age, had completed tenth grade in school, and the record abidingly suggests he was capa-ble of comprehending his constitutional rights when he signed the waiver form. We conclude on this record that the State has established by a preponderance of the evidence defendant's waiver of his constitu-tional rights was knowing and intelligent.

■ There is no indication in the record defendant's will here was overborne by coercion or that any of the circumstances surrounding his interrogation by the police officers was in any sense improper or offen-sive. The record indicates defendant freely admitted his guilt from the beginning. We view the question of the voluntariness of his admissions in light of the totality of the surrounding circumstances and find nothing to indicate his statement to the police offi-cers admitting his culpability was other than voluntary. See Schneckloth v. Busta-monte, *supra*; State v. Cullison, *supra*.

Defendant's contention trial court erred in admitting evidence of his admissions to Officers McElroy and Boettcher is without merit. The record establishes those admis-sions were voluntarily made after defend-ant had knowingly and intelligently waived his constitutional rights.

IV. Trial court imposed a sentence of 20 years imprisonment on defendant at the sentencing hearing. Section 698.1, The Code, 1973 permitted a sentence of life im-prisonment for the crime of rape. At the hearing trial court had available a detailed presentence investigation report including an extensive social history of defendant.

■ At the sentencing hearing, after counsel had been invited to comment, the prosecutor made the following statement for the record: "(A)t one of the hearings * * * it came out that Mr. Swanson had confessed to another act in the same vein as this one". Prompt objection was made by defendant's counsel to the prosecutor's statement and the court then recalled that defendant had made such an admission at a bond review hearing in advance of trial. We cannot interpret the record as indicat-ing the court gave any consideration what-ever to the statement of the prosecutor recited above, and in the absence of any showing trial court actually made reference to improper material or information in its sentencing procedures, we must assume to the contrary. See State v. Waterman, 217 N.W.2d 621, 623 (Iowa 1974); State v. Dela-no, 161 N.W.2d 66, 71 (Iowa 1968).

■ It is our responsibility to carefully consider the sentence imposed and to deter-mine whether it is too severe. Section 793.-18, The Code; State v. Carncross, 205 N.W.2d 698 (Iowa 1973).

■ The defendant forcibly raped a 14-year old girl. We cannot find the sentence imposed was excessive.

We find no error and affirm trial court.

Affirmed.