**STATE of Iowa, Appellee,**

v.

**Henry Harold HAINES, Appellant.**

**No. 60229.**

Supreme Court of Iowa.

Nov. 23, 1977.

Samuel J. Walker, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Jr., Asst. Atty. Gen., and A. Fred Berger, Acting County Atty., Davenport, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of having committed lascivious acts upon the person of one Casandra McGarry, a female child under the age of 16 years, in violation of § 725.10, The Code, 1975. Following his plea of not guilty, he was tried to a jury, convicted and sentenced. He now appeals. We affirm.

On the afternoon of September 7, 1976 Casandra McGarry was playing in the vicinity of a garage in Davenport in which the defendant was residing. Several other children were present at the time. A half-brother of Casandra, John (also known as Tommy) Brooks, age five, testified he saw defendant take Casandra into the garage, close and secure the door. John Brooks, with the aid of another sister, attempted to open the garage door which defendant had locked but failed in their attempt to do so, but were able through a crack in the door to see defendant on a bed, removing Casandra's underclothing.

A neighbor, Mrs. Donna Deval, heard the children beating on the garage door and screaming, and inquired as to the meaning of the disturbance. She was told by the children that a man had their sister in the garage, and Mrs. Deval then listened at the door and heard Casandra calling for her mother. Mrs. Deval then went to a nearby house and told the neighbor, Jackie Powers, to summon the police.

After Mrs. Powers called the police, she went to the garage and called out to the defendant to open the garage door. He did not respond until Mrs. Powers threatened to knock the door down, and then defendant opened the door in a matter of about three minutes, according to her testimony, and appeared with his pants unzipped and with-out a shirt. Mrs. Powers testified she saw Casandra crying hysterically and noticed that her blouse was unbuttoned and that she had about her the odor of semen.

Casandra's mother also testified that the child's blouse was unbuttoned, that the buttons on the blouse were too large for the buttonholes and the child could not have unbuttoned the blouse herself, that in fact, she was unable to unbutton or button any of her clothing.

Mrs. McGarry also corroborated the testimony of Mrs. Powers with respect to there being an odor of semen about the child's face and hair. She also testified the child continued to cry and said defendant had hurt her by inserting his finger in her vagina and anus, employing however other terms for such organs.

When the police arrived on the scene, they observed defendant and testified that he gave evidence of having been drinking and was somewhat disoriented, but did not testify that he was intoxicated. Defendant's version of the incident was that he was being molested by several small children who were coming in and out of his garage-residence, and that he closed the door and unintentionally left Casandra inside, that Casandra began to cry which caused the other children to become excited and call for adult assistance.

Defendant was arrested and charged with a violation of § 725.10, The Code. He filed a request that he be subjected to a psychiatric examination, and the trial court ordered a preliminary examination to be conducted by Dr. Erickson, a psychiatrist, in order to determine if further psychiatric testing was necessary. Dr. Erickson, in his report to the court, stated he had made a prior examination of defendant on March 7, 1974 and furnished to the county attorney a copy of a letter or report under that date. The report indicated that the defendant was below average intelligence, but was not afflicted with any diagnosable mental illness. Counsel for defendant then requested a further psychiatric evaluation, but on the basis of Dr. Erickson's report, the court denied the application.

At trial the State called Paula McGarry, Casandra's mother, who recounted what Casandra had said to her just after the incident occurred. Casandra was not examined at any time at trial in the presence of the jury, nor was her competency as a witness ever determined by the trial court.

Post-verdict motion for new trial was overruled by the court, and defendant appeals stating the following issues for review:

(1) That trial court abused its discretion in failing to appoint, at State's expense, a psychiatrist to examine the defendant in accordance with his request under the provisions of § 775.5, The Code, 1975.

(2) Trial court erred in failing to sustain defendant's hearsay objection to the introduction of out-of-court declarations of the two and a half year old child, Casandra, who made the declarations in an excited state just after the incident, but who was not at any time determined to be competent to testify or produced to testify.

(3) Trial court erred when it failed to submit to the jury defendant's instruction on voluntary intoxication as requested.

(4) Trial court erred in not permitting the jury to view the scene of the crime in accordance with the request of the defendant for the jury to be afforded such view.

(5) Trial court erred in not granting defendant's motion for a directed verdict at the close of State's case and renewed at the close of all of the evidence.

 I. The first issue stated for review is bottomed upon defendant's contention trial court abused its discretion in not authorizing a further psychiatric examination to be conducted at the expense of the State. There is no question that § 775.5, The Code, vested the trial court with limited discretionary power to authorize expenditure of public moneys for psychiatric examinations as might be needed to afford an indigent defendant's proper defense. *State v. McGhee*, 220 N.W.2d 908, 910 (Iowa 1974). Nor is there any question that the request for psychiatric examination such as was requested in this case, might be con-

sidered a necessary investigatory expense in connection with the defense of an indigent person, but the trial court should also avoid the approval of frivolous claims for expenses incurred under the statute. *State v. McGhee*, 220 N.W.2d at 910.

In aiding in determining what expenses of this type are meritorious, *McGhee* sets out certain factors which the trial court should consider, viz: (1) the defendant's past medical history concerning mental and emotional problems, (2) defendant's past conduct, and (3) defendant's apparent state of mind as it appeared to the trial court. *State v. McGhee*, 220 N.W.2d at 913.

A detailed application of the foregoing tests is not necessary in this case. It is obvious trial court had already granted one request for an evaluation of the defendant, and although such evaluation disclosed defendant was below average intelligence and had some emotional problems, it revealed no serious mental condition which would require the court to grant defendant's second request for a further psychiatric evaluation. In view of the fact trial court had previously approved the request for a preliminary evaluation and the report incorporating the evaluation of some two years prior had been made available, we are constrained to the belief trial court did not abuse its discretion under § 775.5 in refusing to grant the request for a second examination.

II. In his second issue presented for review, defendant contends trial court erred in overruling his objection to the admission of the testimony of Casandra's mother concerning Casandra's excited declarations made shortly after the alleged incident occurred. Defendant specifically objected to the following testimony of Mrs. McGarry:

"A. She told me that Butch had hurt her and that's all she would say to me. Then she just kept repeating that Butch hurt me, Butch hurt me. I asked what Butch had done to hurt her and she kept saying he hurt my pee pee and said butt, used the word butt, and he hurt my butt. And I asked her what he had done to her, whether he had put anything in her or

not and she said that he stuck his finger in her pee pee and in her butt and then she kept repeating that Butch had hurt her and that is all I could get out of her."

Defendant suggests trial court erred when it permitted the above recited testimony to come into the record over his objection since it was hearsay and the child was not produced to testify, nor was her competency to testify determined in any manner.

The State asserts the foregoing testimony is properly in the record under the res gestae exception to the hearsay rule and that such exception must apply even though the declarant is a child of tender years.

We have applied the res gestae exception to the hearsay rule in prior cases, and have said that the application of the exception to the question of the admissibility of hearsay testimony is largely within the discretion of the trial court and the trend is to extend the doctrine. *State v. Swanson*, 228 N.W.2d 101, 104 (Iowa 1975); *State v. Crawford*, 202 N.W.2d 99, 101 (Iowa 1972).

We have also enunciated standards for the admissibility of testimony under the res gestae exception to the hearsay rule. When the declaration is spontaneous and in such proximity in point of time with the incident to avoid any presumption of fabrication, it is admissible. *State v. Swanson*, 228 N.W.2d at 104; *State v. Crawford*, 202 N.W.2d at 101.

The record before us indicates the *Swanson* and *Crawford* criteria were met since the declarations were made a short time after the incident occurred and were spontaneous on the part of the child, although admittedly they were made partly in response to specific questions put to her by her mother.

Courts in other jurisdictions have refused to apply the res gestae exception to declarations made in response to specific questions. E. g., *People v. Bush*, 11 Ill.App.3d 31, 295 N.E.2d 548 (1973). Other courts, however, have held that out-of-court declarations made in response to questions should not be automatically declared inadmissible, but each situation must be reviewed on its own facts to determine whether the spontaneity requirement has been met. E. g., *Love v. State*, 64 Wis.2d 432, 440–442, 219 N.W.2d 294, 298–299 (1974); *Bertrang v. State*, 50 Wis.2d 702, 706–708, 184 N.W.2d 867, 869–870 (1971). In view of the trend toward the expansion of the res gestae exception to the hearsay rule, we are constrained to apply the latter view, and hold that the out-of-court declarations made by Casandra meet the spontaneity requirement of the res gestae doctrine. It should be noted the child's answers to the mother's questions did not merely repeat the language of the questions, but were independent answers to the same. Such fact, coupled with the irrefutable evidence the child made the statements while in an excited state, persuade us they meet the test of spontaneity.

The defendant, however, questioned the admissibility of the hearsay testimony on the grounds that the out-of-court statements were made by a two and a half year old child who did not testify and was not found by the trial court to be competent to testify. As is apparent from the foregoing, normally the competency of the declarant is not a factor in determining whether hearsay testimony comes under the res gestae exception. We adhere to the view that even though the declarant was a very young child, the trial court was not required to make further inquiry as to the admissibility of the hearsay testimony. Other courts have allowed out-of-court declarations of young children to come into the record under the res gestae doctrine without meeting any further requirements. E. g., *Love v. State*, 64 Wis.2d 432, 219 N.W.2d 294 (1974); *People v. Butler*, 244 Cal.App.2d 799, 57 Cal.Rptr. 798 (1967); *State v. Hutchison*, 222 Or. 533, 353 P.2d 1047 (1960). The text-writers also are seen in support of this liberal view. See McCormick on Evidence, § 298 at 708 (2d Ed. 1972); 6 Wigmore, Evidence, § 1751 at 223 (Chadbourn rev. 1976).

All of the requirements permitting the admission of the questioned testimony were met, and trial court did not err in overruling defendant's objection thereto.

III. The defendant next contends trial court erred in failing to submit to the jury Uniform Jury Instruction No. 501.18 having to do with voluntary intoxication as a defense to the crime which defendant was charged with having committed. The trial court refused to give the instruction on the ground the record did not support factually the defendant's contention he was intoxicated at the time of the commission of the alleged offense.

On the other hand, the State contends the giving of the instruction was unnecessary since the crime charged was not one involving specific intent, and that there was not sufficient evidence to support the giving of an intoxication instruction.

We do not agree with the State's contention that § 725.10 proscribes an offense in which intent is not an element. The very language of the statute which proscribes the commission of certain acts "for the purpose of arousing or satisfying the sexual desires of either of them" (meaning the defendant and the prosecuting witness), conclusively indicates intent is a necessary element of the offense. Therefore, if there was evidence which tended to establish the defendant was intoxicated to a degree that he could not have formed the specific intent necessary to commit the crime, an instruction on intoxication should have been submitted to the jury. See *State v. Lamar*, 210 N.W.2d 600, 605–606 (Iowa 1973).

The defendant claims there was sufficient evidence of his intoxication since he testified he had consumed eight to ten beers and a pint of peppermint schnapps during the day. Also there was testimony of certain witnesses who said that at the time he was taken into custody he was incoherent and disoriented. There was, however, no evidence as to the time period in which he consumed the liquor, nor was there any opinion given by any of the witnesses who observed him that he was intoxicated or whose testimony tended to associate his observed behavior with intoxication. Officer Reardon, one of the arresting officers, testified defendant was "on the borderline of being drunk but was not drunk" at the time he was arrested. We conclude, in light of the foregoing record, the trial court did not err in refusing to give the intoxication instruction requested by the defendant.

IV. Defendant contends as an additional issue stated for review the trial court erred in overruling his request for a view of the scene of the crime by the jury in order that the jury could observe the crack in the garage door through which the witnesses testified defendant could have been observed at the time of the commission of the offense. Section 780.15, The Code, 1975, vests the trial court with discretion to permit a jury to visit the scene of a crime if the trial judge concludes such is essential and proper. In refusing the request, the trial court concluded that such a view would not aid the jury in reaching a verdict.

The trial judge acted well within the latitude of discretion granted to trial courts in overruling the request of defendant for the jury to view the scene of the crime, and we perceive no abuse of discretion or error in the court's refusal of defendant's request.

V. The final issue which we must consider is defendant's contention the trial court erred in overruling his motions for directed verdict. He based his motions on the proposition there was no evidence in the record which would permit the jury to find the defendant touched the genitalia of the child in violation of § 725.10, The Code. We have, however, concluded above that the child's declarations to her mother were admissible, and in light of the fact such evidence is an element of the crime, the defendant's contention otherwise is without merit.

We perceive no merit in the issues stated by the defendant for review in this case and conclude there is no reversible error in the record. This case is therefore affirmed.

AFFIRMED.