STATE of Iowa, Appellee,

v.

James Kenneth PAULSEN, Appellant.

No. 60412.

Supreme Court of Iowa.

April 19, 1978.

Rehearing Denied June 23, 1978.

Mattson & Gilliam, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Jr., Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, REES and HARRIS, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of assault with intent to do great bodily injury in violation of § 694.6, The Code, 1975, and also charged with being a habitual criminal in violation of § 747.5, The Code. He pleaded not guilty to the information charging him with assault with intent to do great bodily injury, was tried to a jury, convicted and sentenced. Subsequently, his identity was established as to two prior felony convictions and he was adjudged a habitual criminal and sentenced. He now appeals. We affirm.

The county attorney's information charging defendant with the crime of assault with intent to do great bodily injury was filed on August 18, 1976. On September 3 defendant appeared in open court with counsel for arraignment, pleaded not guilty and October 19, 1976 was set as the date for trial. Defendant was then incarcerated in the county jail of Black Hawk County under an order dated August 31, 1976, in which the court stated defendant had violated the terms of his release which had been set by the pretrial services unit of the district court and his bond was then set at $10,000. Motions filed by the defendant to reduce bond were overruled, and on October 1, 1976 he filed a motion for change of venue, which was overruled. On the date set for trial [October 19] defendant moved for a continuance due to the illness of his counsel, and the trial was rescheduled with a pretrial conference set for November 5, 1976.

On the date of the pretrial conference, the State filed an amended information and a supplemental information, setting out the fact that defendant had been twice before convicted of felonies and was a habitual criminal. Defendant had previously waived his right to a speedy trial and withdrew his waiver of such right on November 5, following the filing of the supplemental and amended informations. A demurrer to the amended and supplemental informations and a motion to dismiss filed by the defendant were overruled and the cause came on for trial on November 16, on which date defendant filed four motions in limine. The jury returned a verdict of guilty on November 19, and on December 17 defendant filed a motion in arrest of judgment and for a new trial, both of which motions were overruled. Defendant thereupon filed a motion which he termed a "motion of adjournment of the case" together with affidavits and exhibits in support thereof, which was treated by the court as a motion for change of venue under the provisions of chapter 747, The Code, and was overruled. Defendant then orally moved for dismissal of the cases for a claimed violation of § 795.2, The Code, which was also overruled. The court

then ordered that the matter proceed to trial to a jury on the sole question of defendant's identity with respect to the habitual criminal charge, but in open court following agreement of the parties to reopen the case on certain conditions, defendant admitted his identity with respect to the prior convictions, and he was adjudged a habitual criminal and sentenced on January 7, 1977. This appeal followed.

The assault with intent to do great bodily injury was bottomed upon an incident as the result of which defendant was charged with kicking six-year old Curtis Murphy, the son of Patricia Murphy, with whom defendant had been living. It was asserted he kicked the boy in the stomach, causing severe damage to one of his kidneys requiring emergency surgery in order to remove part of the damaged kidney.

The defendant states the following issues for review which he contends necessitate reversal:

(1) Trial court erred in denying defendant's demurrer and motion to dismiss the amended and supplemental informations charging him with assault with intent to commit great bodily injury and with being a habitual criminal, on the ground of the State's failure to comply with the provisions of § 795.1, The Code.

(2) The trial court erred in overruling defendant's motion to dismiss the amended and supplemental informations on the ground of the State's failure to comply with § 795.2, The Code.

(3) The trial court erred in overruling defendant's objections to the testimony of the prosecuting witness, Curtis Murphy, and in finding the child competent to testify.

(4) Trial court erred in admitting the hearsay testimony of witnesses based on the res gestae exception to the hearsay rule.

(5) Trial court erred in admitting testimony by an attending physician, Dr. Jacobo, concerning statements made to him by Curtis Murphy, the defendant contending that such testimony went beyond the bounds of the minutes of the testimony,

unfairly surprised the defendant, and was highly prejudicial.

(6) Trial court erred in refusing to permit defendant to offer proof concerning statements made by the victim to a Waterloo police officer, allegedly made some time subsequent to the assault and at the scene of the alleged crime.

(7) Trial court erred in overruling defendant's motion for a mistrial based on the prosecution's failure to disclose that a prosecution witness had been promised immunity by the State in derogation of statutory and due process protections.

(8) Trial court erred in overruling defendant's motion for a change of venue based upon the defendant's claim supported by affidavits and other exhibits that the prejudice of the community and the inflamed passions of the local citizenry made it impossible for him to receive a fair trial in Black Hawk County.

(9) Trial court erred in overruling defendant's motion for a new trial based on defendant's claim the State had withheld exculpatory evidence.

(10) Trial court erred in overruling defendant's objection to the opinion testimony of physicians as to the force and nature of the trauma which purportedly caused the injury to Curtis Murphy in the face of defendant's assertion there was no adequate foundation for such testimony.

(11) Trial court erred in permitting a State's witness to use a medical mannequin in demonstrating the injury when such injury was not accurately represented by the mannequin and was not related to other relevant testimony, was untimely, and improperly before the jury.

I. In the first issue stated for review defendant contends trial court erred in overruling defendant's demurrer and motion to dismiss the amended and supplemental informations charging him with assault with intent to commit great bodily injury and being a habitual offender on the ground of the State's failure to comply with § 795.1, The Code, 1975. Section 795.1 provides in part:

"When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

A county attorney's information was originally filed against the defendant on the assault charge on August 26, 1976. Defendant was formally arraigned and pleaded not guilty, and had at no time appeared before a magistrate for a preliminary examination. The amended and supplemental informations were filed on November 5, 1976.

Defendant claims the filing of the new informations violated § 795.1, The Code, since defendant was held to answer by the entry of a not guilty plea and his incarceration. The State asserts that § 795.1 does not come into operation since there was no preliminary information or waiver of such and, therefore, defendant was never held to answer within the meaning of § 795.1.

■ In *State v. Proulx*, 252 N.W.2d 426, 429–430 (Iowa 1977), we rejected a defendant's argument he was held to answer within the meaning of § 795.1 when he entered a not guilty plea since under said section a defendant is held to answer after a preliminary examination by a magistrate or defendant's waiver of it. See generally, *State v. Morningstar*, 207 N.W.2d 772, 775 (Iowa 1973); *State v. Mays*, 204 N.W.2d 862, 866 (Iowa 1973). Therefore, since the defendant was not held to answer within the meaning of § 795.1 by his entry of a not guilty plea and since there was no preliminary examination or waiver such as would permit the court to determine defendant's right to a speedy indictment had been violated, we hold the trial court did not err in overruling defendant's demurrer and motion to dismiss on said basis.

II. In his second issue stated for review, defendant contends his right to a speedy trial afforded him under § 795.2, The Code, was violated. Section 795.2 provides in pertinent part:

"If a defendant indicted for a public offense, whose trial has not been post-poned upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

Defendant contends trial court erred in not dismissing the charge upon defendant's motion after the verdict had been reached. He based such motion on the facts that the trial on the assault charge did not commence until November 16, and the trial on the habitual criminal charge did not begin until December 28, 1976. The State contends the defendant's failure to move for a dismissal until after the trial had been completed and a jury verdict returned was belated and such claim is unavailable to him.

■ We have said that a defendant can waive his right to a speedy trial if he raises the issue after a verdict has been returned unless he is unrepresented by counsel and not admitted to bail during the course of the proceedings. *State v. Myers*, 215 N.W.2d 262, 264 (Iowa 1974). Here, however, since the defendant was represented by counsel during all of the proceedings and he chose not to move for a dismissal until after the verdict, we conclude he waived his right to a speedy trial and that the trial court did not err in overruling his motion to dismiss belatedly made.

We note further that the delay in trial was brought about by defendant's own motion for a continuance, and waiver of right to a speedy trial bottomed upon the illness of his counsel. We have said that delays attributable to a defendant cannot later be asserted by him in connection with a claim of lack or want of speedy trial. *State v. LaPlant*, 244 N.W.2d 240, 242 (Iowa 1976); *State v. Donnell*, 239 N.W.2d 575, 579 (Iowa 1976); *State v. Lyles*, 225 N.W.2d 124, 126 (Iowa 1975). The delay in trial was justified by defendant's waiver of his right thereto, although later withdrawn. We perceive no merit in defendant's claim the court erred in overruling his motion to dismiss belatedly made.

III. Defendant next asserts the trial court erred in concluding the six-year old

victim, Curtis Murphy, was competent to testify. The record discloses the child gave inconsistent responses to the court's and defense counsel's questions concerning whether he would tell the truth, although he ultimately responded that he would do so.

■ The trial court has a wide latitude of discretion in determining the competency of witnesses and its determination in this regard will be reversed on appeal only on a showing of abuse of discretion. See *State v. Swanson*, 228 N.W.2d 101, 103 (Iowa 1975); *State v. Hackett*, 200 N.W.2d 493, 494 (Iowa 1972). Further, we have said the competency of a witness "is not refuted by mere testimonial inconsistency, going more to the weight to be accorded his evidential statements by the fact finding body." *State v. Cartee*, 202 N.W.2d 93, 96 (Iowa 1972). In this case the trial court, after a preliminary examination of Curtis outside the presence of the jury, determined he was competent to testify.

■ We find no abuse of discretion on the part of the trial court in so concluding.

IV. Defendant next questions the trial court's overruling his objection to testimony of certain witnesses based on the res gestae exception to the hearsay rule. Specifically, defendant contends the court erred in permitting Doctors Long and Jacobo, two of the physicians who treated Curtis to testify concerning statements they elicited from Curtis while treating him. Dr. Long testified Curtis told him in response to his question that someone had hit him. Dr. Jacobo said Curtis told him the defendant had hit him. Such statements were made about two hours after the injury to the child.

Defendant also contends the court was in error in permitting under the res gestae exception to the hearsay rule the testimony of a nurse who overheard defendant say at the hospital, "like a dumb ass, I took the boy out to teach him to be afraid of the dark and he fell on the road." Defendant also contends the testimony of Patricia Murphy, Curtis' mother, to the effect defendant told her, "he always seems to hurt the ones he loves," was inadmissible. The statement to Patricia Murphy was made the morning after the injury to the child and the statement to the nurse was made at the hospital shortly after the boy's admission.

In *State v. Haines*, 259 N.W.2d 806, 810 (Iowa 1977), we noted in connection with the res gestae exception to the hearsay rule that the admission of hearsay under the exception lies largely within the discretion of the trial court and that the trend is toward the extension of the doctrine. See also *State v. Swanson*, 228 N.W.2d at 104; *State v. Crawford*, 202 N.W.2d 99, 101 (Iowa 1972).

In *State v. Haines*, 259 N.W.2d at 810, we said, with respect to the admissibility of a hearsay statement under the res gestae exception that "[w]hen the declaration is spontaneous and in such proximity in point of time with the incident to avoid any presumption of fabrication, it is admissible," and we further said the spontaneity requirement can be met even though the declaration is made in response to a specific question.

■ Defendant claims the testimony of the doctors concerning Curtis' statements were inadmissible since they were made some two hours after the injury had occurred. However, time is not a necessarily controlling factor and a declaration that is closely related to the incident although separated by some length of time is permitted to come in under the exception. *State v. Stafford*, 237 Iowa 780, 787, 23 N.W.2d 832, 836 (where declarations made some twelve hours after an alleged rape were permitted in the record).

■ In the light of the foregoing authority we conclude the testimony of Doctors Long and Jacobo concerning the statements of Curtis Murphy were properly admitted under the res gestae exception to the hearsay rule since the statements were made in a context (treatment of the injury) closely related to the happening of the injury. We also note the child was severely injured and that such fact lessens the likelihood of fabrication. We therefore conclude the trial

court did not abuse its discretion in this regard.

■ Defendant objected also to the testimony of the nurse and Patricia Murphy concerning statements made to them as above set out, but the State contends such statements were admissible as admissions by the defendant. The statement overheard by the nurse established the defendant was at the scene of the crime, while the statement to Patricia Murphy was evidence he had hurt the boy. The statements are, therefore, admissible as admissions which are not precluded by the hearsay rule. *State v. Kidd*, 239 N.W.2d 860, 864 (Iowa 1976).

We find no error on the part of the trial court in ruling as it did on the evidence of the doctors, the nurse and the mother.

V. The defendant next contends the testimony of Dr. Jacobo went outside the limits of the minutes of testimony and was, therefore, improper. The minutes of the testimony indicated Dr. Jacobo would testify to "their treatment of the victim, to the surgical procedures performed, to the nature of the injuries, and the type of force necessary to cause the injuries." Defendant asserts no mention was made in the minutes of the testimony to the effect that Dr. Jacobo would testify to statements made by Curtis while the doctor was treating him.

■ A witness whose name is endorsed on the information and the minutes of whose testimony appears thereon is not limited to the substance of the minutes of testimony in actually testifying. *State v. Miller*, 229 N.W.2d 762, 770 (Iowa 1975); *State v. Cunha*, 193 N.W.2d 106, 111 (Iowa 1971). Since the defendant could have deposed the witness as permitted by *State v. Peterson*, 219 N.W.2d 665 (Iowa 1974), he cannot complain of surprise and prejudice by the court's permitting the doctor to testify to the statements of Curtis. The trial court did not err in permitting Dr. Jacobo to testify concerning such statements.

■ VI. The defendant next asserts trial court erred in refusing to admit de-

fendant's offer of proof concerning statements made upon the child's return to the scene of the alleged crime, and claims it was error for the trial court to refuse to permit Patricia Murphy to testify concerning out of court statements made by Curtis at the scene of the injury some 38 days after he had sustained the same. Defendant contends such hearsay testimony should have been admitted under the res gestae exception to the hearsay rule. The statements having been made 38 days after the incident were too remote to the happening thereof to reasonably permit Patricia Murphy to testify to the statements made. Trial court did not err in this particular.

VII. Defendant next contends trial court erred in overruling his motion for a mistrial based on the prosecution's failure to disclose that a prosecution witness, Patricia Murphy, was promised immunity by the State in return for her testimony, in derogation of statutory and due process requirements.

Patricia Murphy testified at the trial that she had been promised immunity by the State with regard to the use of her testimony against her in juvenile proceedings concerning the custody of her children. Defendant asserts that he, the jury, his counsel and the court should have been told about such an agreement in advance of the testimony of Patricia Murphy and that since disclosure was not made, a mistrial should have been granted.

■ Defendant first suggests a mistrial should have been ordered on the basis that the provision for the grant of immunity contained in § 782.9, The Code, was not followed. Said section is inapplicable here, since it applies only to the grant of immunity from prosecution.

Defendant further contends the State's failure to disclose the grant of immunity to Patricia Murphy violated defendant's right of due process on the basis of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In *Giglio*, the Supreme Court said a new trial should have been granted where the defense counsel discover-

ed after the verdict that the government had failed to disclose at trial an alleged promise of immunity to a witness. *Giglio* is inapplicable to the facts in this case since the favored treatment extended to Patricia Murphy was disclosed at the trial before the court and jury. We conclude the defendant was not harmed by the actions of the State in granting immunity to Patricia Murphy for the limited purpose as stated above and the trial court was not in error in failing to sustain his motion for mistrial based thereon.

VIII. Defendant next contends the trial court erred in overruling defendant's motion for a change of venue. The motion was filed some time before trial, supported by affidavits of persons claiming defendant could not get a fair trial in Black Hawk County and transcripts of radio and television broadcasts concerning the crime. Also attached were newspaper articles in a similar vein. One newspaper article quoted the trial court as stating, "there was a strong likelihood of conviction and incarceration of defendant" as the reason for overruling defendant's motion for reduction of bond. Other pretrial newspaper articles were captioned, "Child Abuse Count Filed," "Child Beating Suspect Jailed" and "Judge Refuses to Reduce Bond in Child Beating." The defendant contends that such media dissemination of information made it impossible for him to secure a fair trial on the assault charge in Black Hawk County. Defendant also complains about the widespread news coverage before trial on the habitual criminal charge.

With respect to the overruling of the motion for change of venue of the assault charge, the court said there was no evidence tending to establish a fair minded jury could not be selected in Black Hawk County. The trial court overruled defendant's motion to change venue of the habitual criminal charge, on the ground that the publicity could have no effect on the determination of the identity of the defendant relative to the prior convictions which justified the filing of the habitual criminal charge.

We review the record de novo "to determine whether the trial court abused its discretion in holding that defendant failed to demonstrate a reasonable likelihood he would not receive a fair trial * *." *State v. Pelelo*, 247 N.W.2d 221, 223 (Iowa 1976); *State v. Dague*, 206 N.W.2d 93, 95 (Iowa 1973); *Lloyd v. District Court of Scott County*, 201 N.W.2d 720 (Iowa 1972).

We find no abuse of discretion on the part of the trial court in overruling defendant's motions for change of venue as the evidence fails to indicate the publicity surrounding this case was as pervasive and as prejudicial as the publicity centering around the murder of the police officer in the *Lloyd* case. The newspaper story concerning the judge's comments in refusing reduction of bail along with the other evidence, fails to establish a reasonable likelihood the defendant could not get a fair trial. Certainly there is no abuse of discretion on the part of the trial court in refusing the defendant's request for a change of the trial of his habitual criminal charge since the publicity could have no effect on the issues to be determined at that trial. We find no abuse of discretion on the part of the trial court in overruling the motions for change of venue.

IX. Defendant also claims the trial court erred in overruling defendant's motion for a new trial since the State withheld exculpatory evidence from the defendant, and claims that Police Officer Greenlee was aware that Curtis Murphy had stated the defendant had not hit him even though Greenlee testified he did not recall the child's response. Patricia Murphy, however, did relate the boy's response along the same vein.

We deem it unnecessary to pursue this matter as we find nothing in the record except the defendant's contention that the State had exculpatory evidence which it suppressed. Also, the child's response to the question which defendant contends was not recalled by Officer Greenlee was supplied to the same effect by the testimony of his mother Patricia Murphy. There is no merit in defendant's contention in this area.

X. Defendant contends the trial court erred in permitting Dr. Long to testify as to the force and nature of the blow which caused the injury to Curtis Murphy. He specifically complains no foundation was laid for the use of the term "blow" by the State on direct examination and the testimony of Dr. Long that the injury was not caused by a "slight, light blow". He complains there was no factual basis for Dr. Long's testimony and that there was no evidence in the record indicating Dr. Long was qualified to testify as to the type of force required to produce Curtis Murphy's injury.

█ Trial courts have great discretion in admitting opinion testimony of expert witnesses. *Becker v. D & E Distributing Company*, 247 N.W.2d 727, 733 (Iowa 1976) and citations. Generally, we have said a trial court has not abused its discretion in the admission of opinion testimony of expert witnesses so long as the witness is qualified to advance an opinion in the area in question and there is a sufficient factual basis for the opinion. *Haumersen v. Ford Motor Company*, 257 N.W.2d 7, 11 (Iowa 1977); *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977).

█ Our review of the record indicates to us Dr. Long was qualified to render an opinion as to the character and type of blow which would cause the injury sustained by Curtis Murphy. The record indicates Dr. Long was a urologist who had treated many kidney injuries and that in his practice he had become aware of the causes of injuries and the type of damage inflicted in given cases. Therefore, we conclude Dr. Long was qualified to render the opinion sought. Certainly there was a factual basis for Dr. Long's opinion since he treated the kidney and was familiar with the damage which had been inflicted upon it. A medical expert on the basis of his treatment of an injury and his experience in his field is adequately qualified to testify to the type and character of the cause of injury.

There is no merit in defendant's complaint regarding the terminology employed by the doctor in his testimony (*i. e.*, slight blow and light blow) since the jury could make a distinction in that regard. The trial court did not err in admitting the testimony of Dr. Long as to the type and character of the blow which caused the injury to Curtis Murphy.

XI. Defendant's final issue stated for review is whether the trial court erred in refusing to strike the testimony of Dr. Long relating to a medical mannequin he used in testifying about the injury to Curtis. Defendant contends the trial court committed error in allowing the use of the mannequin since the mannequin did not depict an accurate representation of the injury and it was not introduced into evidence.

█ The mannequin was used for illustrative purposes only, and there was no requirement that it be admitted as an exhibit. Cf. *State v. Blyth*, 226 N.W.2d 250, 272 (Iowa 1975). The trial court did not err in permitting Dr. Long to use the medical mannequin to demonstrate the injury to Curtis and to amplify his testimony.

We find no merit in any of the issues stated by the defendant for review and affirm the trial court.

AFFIRMED.

All Justices concur except RAWLINGS, J., who dissents.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning and result reached in Division VIII of the majority opinion, I respectfully dissent. In support hereof, see dissenting opinion in *State v. Pelelo*, 247 N.W.2d 221, 226–228 (Iowa 1976). I would reverse and remand for a new trial with instructions to prefatorily grant defendant's change of venue motion.